BLADES et al., Appellants, v. HAWKINS et al., etc., Respondents.

St. Louis Court of Appeals, June 30, 1908.

(Opinion by Goode, J.)

1. COUNTY COURTS: Contracts: Execution.  Where a county court entered an order of record for the employment of an expert accountant to perform certain work thereafter, setting forth the terms of the employment and the compensation to be paid, and the party employed filed his written acceptance of the employment, the contract was properly executed under the provisions of sections 6759 and 6760, Revised Statutes 1899.

2. ———: ———: Implied Powers.  The provisions of section 6759, Revised Statutes 1899, limiting the power of counties and municipalities to make contracts, is but declaratory of the common law; such public corporations cannot make contracts unless the power to do so is granted by statute or can be implied because necessary and incidental to the execution of the powers granted, nor will such power be implied unless it is cognate to the purposes for which the corporation was created.

3. ———: ———: ———: Power to Employ Expert Accountant.  Under the provisions of sections 6781 and 6790 and intermediate sections, Revised Statutes 1899, a county court is charged with the duty to look after public funds, examine and

investigate the accounts of different officials, enforce collection of money due the county, order suit brought on bonds of delinquents. This carries with it the authority to employ an expert to examine the documents of the county in order to ascertain whether officials and other persons charged with public money have rendered correct and faithful accounts and made just settlements.

4. The provisions of section 1778, Revised Statutes 1899, which require the county court or some judge thereof to ascertain, by actual examination and count, the amount in the hands of an official when a settlement is required by law to be made with the courts, by such officer, relates only to the examination and account of balances in the hands of officials that settle with the county court; it does not prevent the county court from employing an accountant to examine the books and papers of an official during such period as the court may direct, after settlements have been made, in order to discover defalcations and the cause of discrepancies in such accounts, which had escaped discovery at the time of the settlement.

*(Dissenting Opinion by Bland, P. J.)*

5. ———: ———: **Injunction.** The provisions of section 6763, Revised Statutes 1899, providing a method of inquiry into the legality of contracts made by a county court, do not exclude any remedy at law or in equity that existed prior to its enactment; injunction will lie to prevent a county court from dispensing money under a contract which it has no authority to make.

6. ———: ———: **Power to Employ Accountant.** Section 1778, Revised Statutes 1899, imposes upon the county court or some judge thereof the duty to ascertain the condition of accounts "by actual examination and count" in making settlements with officials holding county funds; the employment of an expert accountant is not incident to the power to make settlements with public officials, nor impliedly conferred by the section; the duty to examine accounts is a personal one which cannot be delegated by the county court.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville,* Judge.

AFFIRMED AND CERTIFIED TO SUPREME COURT.

*G. W. Thornberry, O. F. Douglas* and *Edw. J. White* for appellants.

*Sebree, Farrington, Pepperdine & Wear* for respondents.

STATEMENT.—This is a suit in equity to enjoin the respondents, as judges of the county court of Stone county, from issuing to L. U. Crawford, a warrant to pay said Crawford for services rendered as an expert accountant in examining, checking up and auditing the accounts of various officers of Stone county, pursuant to employment by the county court.    The suit was instituted at the relation of certain citizens and taxpayers, who seek to prevent issuance of the warrant for the reason that the employment of Crawford was without authority of law and public money cannot be disbursed to pay him.    Respondents answered that on or about April 12, 1907, certain of the officers of Stone county then in office and certain other persons who theretofore had been in office, were delinquent in their accounts and had failed to pay to the treasurer of the county large sums of money due the county, aggregating five thousand dollars; that certain of the officers had made incorrect returns to the court of the earnings of their respective offices, and other persons who had occupied the offices of treasurer and collector, had made incorrect and false settlements of their accounts, and had led the court to believe they had made correct returns of the fees due from their respective offices; that knowledge of this had come to respondents in a general way, but they were not apprised of who were delinquent, or in what particulars the delinquencies consisted; that though respondents and their predecessors, as judges of the county court, had performed to the best of their ability, the duty of examining the accounts and records of the various officers of the county, yet neither respondents nor their predecessors were expert accountants or auditors; that respondents were not able to audit the books of the county and recover the amount of the items delinquent because they lacked the necessary skill, and unless said work was done, the amount of the delinquency would be wholly lost; that it would be greatly

to the interest of the taxpayers and the financial affairs of the county, for an accountant to be employed to audit the various books of the officials then in office and theretofore in office; wherefore respondents entered into a contract with L. U. Crawford, an expert accountant, to audit said books and check up the accounts of the various officers for such periods as the court might direct; that Crawford was to receive for his service ten dollars a day and expenses limited to his board while employed in the work and one trip to and from Kansas City, Missouri, his place of residence; that said contract was entered into in good faith by the county court through an agent appointed for the purpose, to-wit, the prosecuting attorney; that shortly after he was hired Crawford began the work of auditing the books, checking up the accounts of the county officers and making reports of his action to the court; that he had completed his services and the compensation due him under the contract amounted to about one thousand dollars; that from the work done by him in investigating the accounts of officers and auditing the books, the county had recovered from delinquent officials, either now or theretofore in office, and from other persons holding money belonging to said county, the sum of more than two thousand dollars, and the further sum of three thousand dollars still delinquent would be recovered; that without said services all this money would have been lost to the taxpayers. Respondents denied the contract was without authority of law, and affirmed it was entered into in the manner provided by law, and denied certain other allegations of the petition which need not be stated. After a temporary restraining order had been issued by the circuit court of Stone county, the case went on change of venue to Greene county, where it was tried and judgment entered finding the issues for respondents on the merits, dissolving the temporary injunction and dismissing the petition.

It appears from the record of the county court of Stone county that on or about April 12, 1907, the court ordered the prosecuting attorney to negotiate with expert accountants for the purpose of employing a suitable one to investigate the records and submit a report to the court. About the same date the court spread on its record an entry reciting that whereas the court had found it advisable to examine the accounts of the various county officers, it was ordered that L. U. Crawford be authorized to check up, audit and examine the accounts of said officers during such periods as the court might direct, and make a report in detail of his findings; that said Crawford be paid for his services ten dollars a day and expenses, it being understood his expenses should be limited to board and car fare for one trip from Kansas City and return; that while the examination of the books was in progress each officer should render every assistance possible to expedite the work, and Crawford should be given free access to all records and files in the various offices which he might desire to use in the investigation. Crawford accepted this employment in writing, agreeing to check up and audit the accounts of the county officers for such periods as might be designated by the court and on the terms expressed in the order. This acceptance was filed and spread on the record. It was admitted at the trial Crawford had performed a large part of the services contracted for at the time the injunction was issued, and at said date the respondents were about to order a warrant on the treasury to pay for said service at the rate of ten dollars a day. It was further admitted Crawford began performance of the work shortly after he was employed; that he performed the services for which he was hired and audited the books of the various officers then in office or who had been in office theretofore; that he had discovered discrepancies and delinquencies to the amount of

$2,229.24, in the accounts of certain officials, to-wit, three ex-county treasurers, an ex-sheriff, the cashier of the county depository and one other person; that these sums due the county were discovered by Crawford during his investigation and had been paid into the treasury.    It was further admitted there was three thousand dollars more which Crawford claimed to have discovered to be due from other men holding office and who had theretofore held office, but which relators denied was due the county.    It was admitted respondents were not expert accountants, but were all farmers; that all the relators, except one, who are asking an injunction against paying Crawford, are bondsmen of one of the delinquent officials; that if the warrant should be issued and paid, the respondents and the prosecuting attorney would refuse to take action to recover the amount of it as they contend it is a legal obligation.    The temporary injunction was sued out June 14, 1907.    On June 17th, pursuant to an order of the county court, a contract in duplicate was entered into between W. E. Renfro, prosecuting attorney and agent of the county, and Crawford.    This contract embodied the terms heretofore stated and contained in the original order of the county court for the employment of Crawford, entered April 12, 1907.

GOODE, J. (after stating the facts).—The right of the county court to issue a warrant to Crawford in payment for his services is denied on two grounds; first because said court had no authority to employ an accountant to examine and audit the books of the county and the accounts of its officers; second, because if it had this power, the contract of employment was not entered into in the manner provided by law.    In support of both these grounds certain statutes are invoked and among others, section 6759 (R. S. 1899) which says no county, city, etc., shall make a contract unless the

same is within the scope of its powers or is expressly authorized by law, or unless it is made on a consideration wholly to be performed or executed subsequent to the making; and that the contract, including the consideration, shall be in writing, dated when made and subscribed by the parties thereto, or by an agent authorized by law and duly appointed in writing. The next section (6760) says duplicate copies shall be executed of every such contract, one of which shall be filed in the office of the clerk of the county court if made by a county, or with the proper officer if the contract is made by some other body politic; that it shall not be taken thence except to be used as evidence in some legal matter or cause; and that in case of a variance between the copies, the one on file with the designated custodian shall control the construction. The contract in question was not reduced to duplicate writings signed by Crawford and Renfro, agent of the county, until June 17th, three days after the temporary injunction was issued and after the work for which Crawford was employed had been done. For this reason it is contended the employment was void and the county court was without authority to pay Crawford. This is not the interpretation put on the statutes we have cited by the Supreme Court. In Globe Furnishing Co. v. School Dist., 51 Mo. App. 544, it was held by a majority of the members of the Kansas City Court of Appeals that failure to enter into a contract with a public municipality (in said case a school district) by executing duplicate copies in writing, was fatal to the validity of the contract. One of the judges dissented and held that when such a contract was reduced to writing and signed by the parties, it became binding and operative, as the statute requiring duplicate copies was directory. In Saleno v. Neosho, 127 Mo. 627, the question was presented for decision to the Supreme Court. In said case it appeared the city of Neosho had passed an ordinance granting the plaintiff

a waterworks franchise, and agreeing to pay a certain sum yearly for water hydrants used by the city. After this ordinance had been ratified by a vote of the people, plaintiff filed with the board of aldermen his written acceptance of the contract contained in the ordinance. It thus will be seen the cause is identical with the present one as regards the form of the contract originally entered into, because, in the present case, the county court entered of record an order employing Crawford for a specified work on specified terms and he filed his written acceptance. The Supreme Court said in the Neosho case, the validity of the contract for the hydrants was in no way dependent on its having been executed in duplicate as required by the statute aforesaid, as the purpose of said statute was to provide controlling evidence of the terms of the contract in case a dispute arose regarding its terms. See, too, Aurora Water Co. v. Aurora, 129 Mo. 340; McShane v. School Dist., 70 Mo. App. 624. When the county court of Stone county entered of record its order for the employment of Crawford for work wholly to be performed in the future, setting forth the details of the employment and the compensation to be paid, and Crawford filed his written acceptance of the employment, we think, under the above authorities, the contract was complete as far as the mode of its execution is concerned.

The more important proposition and the one chiefly controverted, is as to the power of the county court to employ an expert accountant to audit the public records and the accounts of present and prior officials. Its power to do so must be found in some express statutory grant, or else implied as essential to the proper execution of powers expressly granted, or duties expressly imposed. Section 6759 of the statutes prohibits counties and other municipal bodies from making any contracts not within the scope of the powers of the municipality or expressly authorized by law. This provision

is but declaratory of the common law; for these public corporations never have been deemed to possess authority to contract, or do any other act, unless the power was granted by statute or could be implied because necessary and incidental to the due performance of powers granted or duties enjoined.     This doctrine applies to county courts and commissioners, as well as to the governing bodies of other subordinate political corporations.     [7 Am. and Eng. Ency. Law, sec. 789; Wolcott v. Lawrence Co., 26 Mo. 277; Sturgeon v. Hampton, 88 Mo. 204.]     There is, in our statutes, no grant of authority to a county court to employ an expert to audit and examine the books and accounts of the county and its officers.     Hence, if this authority existed in the present instance, it was because the law implied it as essential to the due exercise of powers specifically vested in the county court by statute or the performance of a duty specifically required of said tribunals.     The courts are conservative in implying powers not expressly given. One limitation imposed by law on these implications, is that no power will be implied to belong to a public corporation unless it is cognate to the purpose for which the corporation was created.     [Grant Co. v. Bradford, 72 Ind. 455; 2 Abbott, Mun. Corp., sec. 708, p. 1672.] Therefore in determining whether or not the county court of Stone county had authority to employ an expert to look over official books and accounts, we must call to mind the duties of such a court.     A county court is the general fiscal agent of the county and is possessed of a supervisory power over the collection and preservation of its funds.     Various officials, such as treasurers, collectors, sheriffs, marshals, clerks and constables, as well as other persons chargeable with money belonging to the county, are required to report to and make settlements with said court. All these officials and persons must render accounts to the county court at stated terms thereof, pay any balance due the county

into the treasury and take duplicate receipts and deposit them with the clerk of the court. [Sec. 6781 and other sections, ch. 97, R. S. 1899.]    If any person charged with the duty of reporting to and settling with the court fails to render a true account, it is made the duty of the court to adjust the account of the delinquent according to the best information it can obtain, ascertain the balance due and require said balance to be paid into the treasury.    Other sections following section 6782 of the statutes, provide for proceedings by the court against delinquents.    In addition to said provisions, section 6790 requires the court to audit and adjust all accounts to which the county shall be a party, order payment out of the treasury of any sum of money found due by the county on such accounts, enforce the collection of money due it, order suit to be brought on the bond of any delinquent, issue process to secure the attendance of any person deemed necessary to be examined in the investigation of any account, compel the attendance of such person and the production of accounts, books, documents and papers, and examine all parties and witnesses on oath touching the investigation of any account.    The various provisions of the statutes demonstrate that it is not only within the power, but is the duty of the county court, to look after public funds, examine and investigate the accounts of the different officials and other persons, enforce the collection of money due the county and order suits to be brought on the bonds of delinquents.    In short, responsibility for the safety of public moneys, the accuracy and honesty of the accounts and settlements of officials, and the collection of defalcations, is imposed on county courts.    The question for decision is whether the express delegation of those powers and duties by the Legislature, carried with it the authority to employ an expert to look over books and documents in order to as-

certain whether officials and other persons chargeable with public moneys, had rendered correct and faithful accounts and had made just settlements with the court. In our opinion this inquiry ought to be answered in the affirmative. While it is true the law is strict in limiting the authority of these courts, it never has been held that they have no authority except what the statutes confer in so many words. The universal doctrine is that certain incidental powers, germane to the authority and duties expressly delegated and indispensable to their performance, may be exercised. [7 Am. and Eng. Ency. Law (2 Ed.), pp. 987, 989 and cases cited in notes.] In Boggs v. Caldwell Co., 28 Mo. 586, the Supreme Court allowed a bill for services rendered in indexing the deed records of a county pursuant to an employment by the county court. In the brief against the demand Wolcott v. Lawrence Co., supra, was cited in support of the proposition that the county court was without power to make the contract; but the Supreme Court deduced the power from the duty of the county court to look after the property of the county, and said that though it was the duty of recorders to make up their indexes without extra compensation, yet in the course of time it might happen these books would become unfit for use and need to be renewed. We regard that case as in point, for, though the work was different from what respondents contracted for, it was not more essential to the performance of a statutory duty of the county court. The precise question at bar was decided in Duncan v. County Commrs., 101 Ind. 403. Those commissioners, who in Indiana, correspond to our county courts, had employed said plaintiff to examine and report on the accounts of the treasurer of the county, and the plaintiff having done the work, asked payment for his services. The Indiana statute relied on as authorizing the employment, was one giving the board of commissioners power to audit the accounts

of all officers having the handling and disbursement of the funds of the county; a statute of no broader scope than those we have cited.　It was held the commissioners had full authority with reference to the adjustment of public finances and, as incident thereto, power to employ an accountant.

As impugning the authority of respondents to make the contract in dispute, much stress is laid on section 1778 of the statutes.　Said section says that in the settlement required by law to be made with county courts by treasurers and other officers holding funds, it shall be the duty of the county court or some judge thereof, to ascertain by actual examination and count, the amount in the hands of an officer and to what particular fund it appertains, and that such examination and count shall include all funds on hand to the day when the settlement is made.　Because the section requires the county court, or some judge thereof, to ascertain, by actual examination and count, the balances in the hands of officials, it is argued that no one else can be employed to do or assist in the work.　This would not follow necessarily, we think, but do not decide, for in our opinion said statute has nothing to do with the present case.　It relates to the examination and count of balances in the hands of officials when they settle with the county court.　The idea is to prevent a perfunctory settlement by requiring the court to make an actual examination and count of the balances and funds and ascertain to what particular fund the money belongs.　Crawford was not hired for such a work—was not hired to examine the account tendered by some official at one of the periodical settlements required by law, nor to count the funds in his hands.　He was employed to go over the books, papers and accounts of officials who were in office or theretofore had been, during such periods as the court might direct.　Settlements had been made by different officials at different

times during those periods; and, according to the answer, which there is no evidence to disprove, the court had examined and counted the balances as required by law when the settlements were made. Nevertheless, respondents had heard of defalcations by certain officials, and of discrepancies in their accounts which had escaped attention at these settlements. In order to ascertain whether there was merit in these reports, respondents, who were farmers and not trained in bookkeeping or the investigation of accounts, deemed it necessary to employ an expert. It turned out the reports were well founded and a substantial sum was paid into the treasury without controversy as the result of the expert work. We deem authority to contract for such work is not only wholesome, but indispensable to an accurate knowledge by the county court of the financial condition of the county.

The judgment is affirmed. *Nortoni, J.,* concurs, *Bland, P. J.,* dissents; deems the decision in conflict with that of the Supreme Court in Wolcott v. Lawrence Co., 26 Mo. 277, and asks that the case be certified to the Supreme Court for decision. It is so ordered.

STATEMENT.—On February 9, 1907, the county court of Stone county, by resolution entered of record, authorized the prosecuting attorney of the county, as agent of the county, to negotiate for the employment of an expert accountant to make an examination of the books of such of the public officers of the county as are required to make settlements with the county court of the public funds which come into their hands. On April 12, 1907, the county court, by order entered of record, agreed to hire L. U. Crawford, Esq., an expert accountant to check up and examine the accounts of the various county officers of the county and to pay him $10 per day for his services and certain expenses. Mr. Crawford accepted these terms of employment and his acceptance was spread upon the records of the court. On June

17, 1907, a formal written contract, embodying the terms set forth in the order of April 12th, was entered into between the county of Stone, through B. W. Renfro, as agent, and L. U. Crawford.   Mr. Crawford immediately entered upon the performance of his part of the contract, made an examination of the books of the county officers and reported that he found the following due:

"From W. B. Langley, ex-county treasurer .. $  321.08
 From W. I. Long, ex-county treasurer ....    1688.00
 From W. I. Long, ex-county treasurer ....     206.13
 From W. T. Moore, ex-sheriff ...........      17.44
 From Jno. T. Moore for W. R. Gillette ..      56.59
                                           —————
                                           $2289.24"

These delinquencies were immediately made good by payments to the county treasurer.   Mr. Crawford also reported other defalcations amounting to about $3,000, but the correctness of this much of his report is in dispute.

It is admitted that Mr. Crawford earned $1,174 under the terms of his agreement with the county.

Under the provisions of section 6763, Revised Statutes 1899, fifty residents, solvent and responsible taxpaying citizens of Stone county filed a petition in the circuit court of said county, stating that they believed the contract entered into with Mr. Crawford was illegal and asking that its legality be inquired into.   Afterwards, to-wit, on June 14, 1907, the plaintiffs, Blades, Speers, Grisham, Short, Smythe and Rickman, all resident taxpayers of Stone county, presented their petition to the judge of the Stone Circuit Court, praying that the defendants, who are the three justices of the county court of said county, be enjoined from issuing a warrant to Crawford in payment for his services.   A temporary restraining order was issued by the circuit court. Subsequently the venue of the cause was changed to Greene county, where the cause was tried, resulting in

a judgment for the defendants from which the plaintiffs appealed.

BLAND, P. J. (dissenting) —1. But two questions are presented by the record and briefs for determination. They are, first, whether or not, on the pleadings and facts, injunction is the appropriate remedy, and, second, whether or not the county court had any legal authority to employ Mr. Crawford at the expense of the county to render the services contracted for and rendered by him. It is admitted by defendants "that at the time of the issuance of the injunction said Crawford had performed a large part of the services under the attempted contract, and that at the time of the issuance of the injunction, the defendants, as the county court of Stone county, were about to order the issuance of a warrant upon the county treasurer for the payment of the services that had been performed, for the amount earned up to that date at the rate of $10 per day by said Crawford." The county court and the county attorney contend and insist that said obligation is the obligation of the county, and that said county court was prepared to order the issuance of the warrant at the time of the issuance of said injunction. From this admission it appears that the county court would have issued the warrant notwithstanding the petition of the fifty citizens and taxpayers filed in the circuit court, asking that court to determine whether or not the contract with Crawford was valid or invalid, and but for the injunction defendants would have done the mischief, the doing of which plaintiffs seek to enjoin. But it is contended by defendants that section 6763, supra, affords a complete remedy and the only one open to plaintiffs, in the circumstances. This section provides a method of inquiry into the legality of contracts made by the county court, as agent of the county, which does not exist independent of the statute, and seems to contem-

plate that the inquiry should be made before the contract is performed or its performance is entered upon by the other contracting party. The remedy is purely statutory and does not exclude any remedy at law or in equity that existed prior to its enactment. It is well settled that a bill in equity will lie to enjoin a public municipal corporation from acting in contravention of the laws of the State, and that this remedy is available to taxpaying citizens of the municipality, whose individual interests or property will be affected by the illegal act, such as the illegal disbursement of public funds. [State ex rel. Cramer v. Hager, 91 Mo. 452; State v. Saline County Court, 51 Mo. 350; Black v. Ross, 37 Mo. App. 250.] Therefore, if defendants were about to illegally disburse public funds of Stone county to Crawford, the plaintiffs, as taxpaying citizens, were entitled to enjoin defendants.

2.   Did the defendants, as the fiscal agents of Stone county, have power to employ Crawford, at the expense of the county, to perform the services he performed? That Crawford's services were beneficial to the county does not admit of question, but the question is not one of benefit or no benefit, but whether the employment of Crawford was authorized by law. Section 1778, Revised Statutes 1899, provides:

"In the settlements required by law to be made by the county court with treasurers and other officers holding county funds, whether quarterly, yearly or otherwise, it shall be the duty of the court, or some judge thereof, to ascertain by actual examination and count the amount of balances and funds in the hands of such officers, and to what particular fund it appertains, and such examination and count shall include all funds on hand up to the day on which such settlement is made."

In making these settlements the county court does not act in a judicial capacity and its settlements may be set aside for mistake. [State to use, etc., v. Roberts et al., 62 Mo. 398; Cole County v. Dallmeyer, 101 Mo. 57.]

The section imposes the duty on the county court, or some judge thereof, to ascertain the condition of accounts by "actual examination and count." The section is the warrant of authority to the county court to make these settlements and in making them the court acts as the agent of the county (Wolcott v. Lawrence County, 26 Mo. 272) and its agency or powers are restricted to such as are expressly conferred by statute (State ex rel. v. Shortridge et al., 56 Mo. 126; Sturgeon v. Hampton, 88 Mo. 204; State ex rel. v. Wilder, 20 Mo. l. c. 105). But defendants contend that the employment of an expert accountant is incident to the power to make settlements with public officers. Defendants allege in their answer that they are farmers by occupation and not competent to discharge the duties imposed upon them by section 1778, supra; that the employment of an expert accountant was indispensable, and contend that the power to employ an accountant is impliedly conferred by the section. The reading of the section repels this contention for it provides that the court, or one of the judges thereof, shall "ascertain by actual examination and count the amount of balances and funds," etc. The duty is a personal one, which cannot be delegated to another, and an examination and count made by any person other than by the court, or a member thereof, is of no binding force on any one. The statute intended that the results reached by the settlement should be official and legally binding on the officers with whom the settlement is made, subject to attack for fraud or mistake, and selected as the agents of the county to make the settlement, the county court composed of persons, who, in contemplation of law, would be peculiarly fitted to make the settlement. It was not thought by the Legislature, after providing for frequent settlements by the county officers and designating competent agents of the county to make the settlements, that the accounts of the officers would, or could, become so complicated and entangled as to re-

quire the services of an expert to untangle them, and such condition would never arise if the county courts would require officers to settle at the time and in the manner required by law, and we unhesitatingly conclude that the county court of Stone county had no power or authority to employ Mr. Crawford, at the expense of the county, to do what the law requires the county court, or some judge thereof to do.

Defendants cite a number of cases where it has been held that county courts possess such implied powers as are necessary to carry out express grants of power, such as to purchase a site for a courthouse, where the court is expressly authorized to erect a courthouse. These cases are inapplicable to the facts in this case, for the reason the county court did not contract with Crawford to do something incidental to the exercise of a granted power. but employed him to exercise a power which the law expressly provides must be exercised by the court or by one of the judges thereof, to-wit, by an actual and personal examination and count.

I therefore think the judgment should be reversed and the alternative writ made perpetual and dissent from the opinion of the majority of the court and ask that the case be certified to the Supreme Court for final decision.