PAINTER v. NAPOLEON TP., HENRY COUNTY, OHIO, et al.

(District Court, N. D. Ohio, W. D. November 23, 1910.)

No. 1,310.

1. BANKRUPTCY (§ 166*)—PREFERENCE—"NOTICE" OF INSOLVENCY.

"Notice" to a township trustee of the insolvency of his brother, a defaulting township treasurer, was notice to the township, within Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), relating to preferences.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 166.*

For other definitions, see Words and Phrases, vol. 5, pp. 4839 4844 ; vol. 8, p. 7733.]

2. BANKRUPTCY (§ 178*)—PREFERENCE—FRAUDULENT TRANSFER—NATURE OF TRANSACTION.

A town trustee, having discovered the insolvency of his brother, the town treasurer, and a shortage in his accounts of nearly $5,000, persuaded the mother of their wives to convey to the wives jointly certain land. The treasurer's wife then conveyed her interest to her sister for the stated consideration of $2,500. The sister and her husband, the trustee, mortgaged the land for $5,000, and drew one check for $2,500 to the order of the treasurer's wife, which she indorsed to her husband, and another to the treasurer himself for the balance of the shortage. Both of these checks were deposited to the treasurer's official credit. At the same time with these transactions, the treasurer conveyed a homestead, to which he had title, to his wife for the expressed consideration of $2,500. Held that, though the $2,500 check from the trustee's wife to the treasurer's wife was used by the latter to purchase the homestead, and was an attempt to put the homestead beyond the reach of creditors, so as to render the conveyance invalid and voidable by the treasurer's trustee in bankruptcy, yet the $2,500 could not be recovered from the town as an unlawful preference, the money having been donated by the mother of the wives for the express purpose of making up the shortage in the treasurer's accounts, and the treasurer's wife being liable to be compelled to devote it to that end if she had not done so, and hence the transfer of the homestead was not an essential part of the payment of the money to the town.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 178.*]

Action by Clyde R. Painter, trustee in bankruptcy of Henry Delventhal, against the Township of Napoleon, Henry County, Ohio, and another. On exceptions to master's findings. Exceptions allowed. See, also, 156 Fed. 289.

C. K. Friedman and James P. Ragan, for plaintiff.

E. N. Warden, Donovan & Dittmer, and D. D. Donovan, for defendants.

KILLITS, District Judge. This is an action on the part of the trustee to recover of Napoleon township, Henry county, Ohio, what the trustee assumes to have been a preference to the township as a creditor of the bankrupt.

The bankrupt, on the 11th of September, 1906, was treasurer of Napoleon township, and as such treasurer was charged with more than $5,000 of township funds. He was, however, actually a defaulter to the township for nearly $5,000, a fact continuing from a time prior

to the last examination of the township treasury by the trustees. It appears from the testimony that the township trustees made their examination required under the law of Ohio by taking the clerk's statement of how much money the treasurer was charged with and the treasurer's statement, unconfirmed, as to how much he had on hand, and that, had they made such an examination as the law contemplates, in March, 1906, they would then have discovered the fact that their treasurer was an embezzler.

One of the trustees was William Delventhal, a brother of Henry, who on the 11th of September, 1906, discovered the desperate condition of his brother's official and private affairs, for Henry was in fact hopelessly insolvent and had been for a long time. Henry and William had married sisters, and, in order to make up the deficiency, William, the trustee, persuaded their common mother-in-law to deed to their wives jointly 40 acres of land. Johanna, the wife of the treasurer, Henry, then conveyed to her sister, the wife of William, for the expressed consideration of $2,500, her interest in the lands thus coming to her and her sister from their mother. William and his wife, Frieda, now having the full title to the 40 acres, mortgaged the same for $5,000, and on the proceeds of this mortgage they made two checks, one for $2,464.28, and one for $2,500, making up the exact amount of the defalcation, $4,964.28. The one check was made directly to Henry Delventhal, treasurer; the other check for $2,500 was made payable to Johanna Delventhal, wife of Henry, by her was endorsed in blank, and delivered to Henry, who deposited it and the other check in a bank in Napoleon to the credit of himself as treasurer of the township. These proceedings were all had on the same day, namely, the 11th of September, 1906, except that the deposit of the checks in the bank did not occur until the following day. On the 11th, also, Henry, having title himself to a homestead in Napoleon, conveyed the same for a consideration of $2,500 to his wife, Johanna. The defalcation being made up in this way, the other trustees were informed of the situation, and the board was called together to receive Henry's resignation as treasurer and to elect a new treasurer.

On the 17th of September, 1906, a petition in involuntary bankruptcy was filed against Henry Delventhal, and the trustee has brought this action to recover of the township $2,500, upon the theory that the transactions above set out operated to prefer the township as a creditor of Henry through the transfer of his homestead to his wife, the assumption being that the check made by William and Frieda to Johanna for $2,500 was the consideration to Johanna for the conveyance to them of Johanna's interest in the land acquired from the mother-in-law, and that the same check was indorsed in blank and delivered to Henry and used by Henry to deposit to his credit as treasurer as the consideration for the conveyance by Henry to Johanna of the homestead, and that by this roundabout way the homestead property was used to prefer the township.

The case was referred to J. E. Shatzel, referee for Wood and Henry counties, as special master, and the matter now before the court arises on exceptions to the master's finding of a preference, and rec-

ommending that the township be directed to pay into the hands of the trustee $2,500. The court is with the special master in holding as a matter of fact that the consideration paid by Frieda to Johanna was used by her as a consideration for the purchase from Henry as a homestead, and that the transaction was an attempt to place the homestead beyond the reach of creditors; and as conclusions of law that the township was a creditor of Henry in the same class as the latter's general creditors, and that William's knowledge of Henry's insolvency was imputable to the township.

[1] Counsel in the case very properly regard this proceeding as coming under subdivision (b) of section 60 of the bankruptcy act, which, as applied to the facts of this case, requires that the record show facts charging the township with knowledge of the insolvency of Henry. This knowledge was, of course, only within the breast of the one trustee, his brother, William, until after the defalcation was made up.

Counsel for the township have argued strenuously and ably, upon much authority, that the knowledge of William alone was not sufficient to charge the township, citing many authorities which deal with situations growing out of the relation of directors and trustees in private business affairs to their principals and to the peculiar facts of the respective cases.

We do not think that any of these authorities apply to this situation. William Delventhal, as a public officer, owed a duty to impart to his fellow members any knowledge that he acquired affecting the public interest, and that duty was superior to any possible obligation he could be under as a private citizen, even if it affected his brother's safety. A rule which may apply to the conflicting interests of officers of private corporations cannot govern in a case of this kind, for the duties of a public officer and his private interests cannot meet on equal terms. The organized corporation of Napoleon township is its board of trustees, and every consideration of public policy seems to demand that each member of the board is the agent of the board as to any matter of knowledge coming to him affecting the public interest, and that any fact which does come to his attention which is vital to the public welfare must come to him officially. Any other rule might operate very mischievously. It has been repeatedly held, and there is no authority apparent to the contrary, that knowledge by an individual trustee, or an individual county commissioner, or an individual member of a town council, of a defect in a highway within their respective jurisdictions, is sufficient to impute knowledge to the corporation of which they are officers, respectively, in an action for personal injuries; and the rule grows out of the necessities of the situation. To say that Napoleon township did not know of the insolvency of Henry Delventhal, and did not know of his indebtedness to it, and could not know it until the trustees were convened in session is to state a proposition that we are sure no reasonable person would adhere to, and yet, in the ultimate, that is the proposition involved in the claim that the township had no reasonable cause to know the results of this situation because the facts were known to one member of

the board only. If they were known to William Delventhal officially, then, surely, they were known to the township. If we may say that they were known to William Delventhal unofficially only, then we reach the absurd conclusion that if they were known unofficially or in the same way to each of the three individual members of the board of trustees, the township could not be charged with knowledge until these three gravely got together and resolved that their unofficial knowledge should become public. Besides, the facts show that had the trustees done their duty in their last examination of the township treasury they would have discovered the embezzlement of their treasurer, and would have been put upon inquiry from which they could readily have ascertained the fact of his hopeless insolvency.

[2] These results, however, do not conclude the case. Assuming that the transfer of the homestead worked an intentional fraud upon creditors, to which William was a party, yet it cannot be said either that the township became thereby a party or that it profited as a result thereof. The participation therein of William was not an official act; it was not directed by, nor known to, the other members of the board; it was not in the line of official duty. Being a fraudulent act, it could not be the act of the township without formal direction of the board of trustees as an organization. It is equally assured that the township gained no profit thereby, for the very plain reason that it was not necessary to the acquirement of means to square Henry's official accounts. We gather from the testimony that the mother-in-law unconditionally devoted the 40 acres to that purpose, conveying them to her daughters rather than to him directly, for family reasons, at which the record hints. The use of Johanna's interest to effect a transfer of the homestead appears to have been a side enterprise, not essential to the complete devotion of the old lady's property to Henry's salvation. The brothers and their wives simply took advantage of the situation to gain another point, in which the township had no interest. It seems clear that had Johanna not otherwise joined her sister in using the property to get the means of saving her husband, she could have been compelled to act to effect the purpose for which the land was given her.

If we are right in this line of reasoning, it follows that the special master was wrong in his final judgment, and that the trustee in this case pursued the wrong parties in his action. The general creditors profit by the fact that a very large claim against their debtor is satisfied without depleting his assets, for, of course, it is not difficult, on the facts of this record, to use the homestead, as far at least as it may exceed in value the bankrupt's right of exemption, in the liquidation of general claims.

The exceptions to the findings of the master are therefore allowed.