**Blanche Deputy LYNCH, Plaintiff-Respondent,**

v.

**WEBB CITY SCHOOL DISTRICT NO. 92, Defendant-Appellant.**

No. 8622.

Springfield Court of Appeals. Missouri.

Aug. 25, 1967.

**610**

Myers, Webster & Perry, Webb City, for defendant-appellant.

Herbert Van Fleet, Joplin, for plaintiff-respondent, Blanchard & Van Fleet, Joplin, of counsel.

STONE, Presiding Judge.

On this appeal, defendant Webb City School District No. 92 in Jasper County, Missouri (hereinafter referred to as the district) seeks to be relieved of a summary judgment in the principal sum of $3,850 entered in favor of plaintiff Blanche Deputy Lynch on Count II of her petition for salary allegedly due her as a teacher under a contract for the 1961–62 school year. Defendant's primary and principal contention is that the trial court erred in refusing to enter a summary judgment for it on Count II because "there was no contract between the parties." On a previous appeal, we affirmed a summary judgment for plaintiff on Count I for the balance of her salary under a contract for the 1960–61 school year. Lynch v. Webb City School District No. 92, Mo.App., 373 S.W.2d 193.

Plaintiff, a widow then fifty-eight years of age with considerable teaching experience, was first employed by the district for the 1958–59 school year. The events, out of which this suit arose, occurred during the latter part of the 1960–61 school year, her third year in the Webb City system. As

shown by the minutes of a meeting of the school board held on March 10, 1961, "the list of teachers as presented by Supt. Miner [was] reelected for the 1961–62 term" upon motion duly made, seconded and unanimously carried; and plaintiff's name was included in such "list of teachers" made a part of the minutes of that meeting. The salary of each teacher was fixed by the graded salary schedule adopted by the board, which accorded recognition to the number of years the teacher had taught in the Webb City system and to his or her academic qualifications. Witness Madge T. James, secretary of the school board for sixteen years, agreed that it had been "their [the board's] custom and in accord with their rules that in March of each year they elect teachers to be reemployed for the ensuing school year."

At a special board meeting held on April 4, 1961, the minutes of the meeting of March 10 "were approved," the ballots cast at the annual school election were canvassed, the two reelected members of the board took their oaths of office (there was no change in the membership), and the newly-constituted board organized by electing William H. Perry as president and William R. Chinn as vice-president. Section 165.320 [now § 162.301; L.1963 p. 222 § 3–30]. (Except as otherwise stated, all statutory references are to RSMo 1959, V.A.M.S., and all references to rules are to the Rules of Civil Procedure, V.A.M.R.)

On April 5, 1961, Superintendent Miner (so he stated in his answers to interrogatories) "caused to be delivered to plaintiff, a form for a contract for the 1961–62 school year together with a notice that *she had 15 days thereafter in which to accept or reject said form contract,*" both the "form contract" and "notice" being copied marginally [1] in their entirety. (Except as other-

---

1. TEACHER'S CONTRACT

Form No. CD–60

Sections 163.080 and 163.090 RSMo

THIS AGREEMENT, made the _____ day of _____, 19__, between Blanche Deputy, a legally qualified public school teacher, of the first part, and the School Board of the Webb City School District No. 92, County of Jasper, State of Missouri, of the second part.

Witnesseth: That the said Blanche Deputy agrees to teach the public school of said District for the term of nine months, commencing on or about September 1, 1961, for the sum of $3850.00 dollars per year, to be paid in 12 equal monthly payments and that for services rendered and reports correctly made, according to law, said Board agrees to issue warrants upon the District Treasurer in favor of the said Blanche Deputy for the amount of wages due under this agreement.

This Contract is subscribed to with a full understanding of Sections 163.010, 163.080, 163.090, 163.100, 163.110, 165.110, 165.230, 165.233, 166.030, 167.080, 168.110, 168.020, 168.030, 168.040, 168.050, 168.060, 168.090 RSMo. Done by order of the Board, this _____ day of _____, 19__.

_____, President

_____ Teacher

Attest:

_____
Clerk or Secretary

------------------------------------------------------------------------

Memo to: TEACHERS

Subject: CONTRACTS

Enclosed are copies of your contract for next year. The amount of the contract is determined by the basic salary schedule. In case you earn advancement under our schedule, or in case the salary schedule is increased, the contract will be adjusted accordingly.

You have fifteen days, or until April 20, in which to return your signed contract.

Lawrence Miner
Superintendent of Schools

wise stated, all emphasis herein is ours.) "About the same date" a form contract identical with the one delivered to plaintiff, except for the teacher's name and salary, was delivered to each of the other teachers who had been reelected at the board meeting of March 10. The form contracts had been prepared by the secretary of the board subsequent to that meeting, but none of them had been signed by the president of the board or attested by the secretary prior to their distribution to the reelected teachers.

On April 7, 1961, there first "came to my attention" (so superintendent Miner stated) numerous alleged professional shortcomings on the part of plaintiff [see Lynch, supra, 373 S.W.2d at 196, 198(11)], which, however, were said to have been manifested throughout the 1960–61 school year. The superintendent also charged that plaintiff had been guilty of an "act [which] showed disloyalty to the superintendent and to the board of education," in that at a teachers' meeting on April 6, 1961, plaintiff had "repeated * * * in a manner which was critical" a question which he (the superintendent) had answered three weeks previously, when plaintiff had asked "if the board of education would use the foundation program monies for teachers' salaries or * * * for some other means" and he had "fully explained * * * that the board of education would use the additional funds to strengthen teachers' salaries." Plaintiff's testimony by deposition was that she simply asked the superintendent at the teachers' meeting on April 6 "if that little note [the memorandum or "notice" copied marginally in note 1] meant that if the foundation program didn't pass we were going to get a raise anyway," but that he became "just really angry because I asked him this question"—"bawled me out terribly."

Whatever the precipitating cause (here immaterial) may have been, the superintendent called plaintiff to his office on April 7 and asked her to resign. According to the superintendent, "plaintiff [then] said she *would* resign, that she would not work where she was not wanted." Although conceding that she had commented to two other teachers that "I wouldn't want to teach where they didn't want me," plaintiff insisted that she did not so state to the superintendent and "never did say I would resign," and her testimony that, when the superintendent "handed me a piece of paper and pencil * * * and said 'write your resignation out for next year,'" she had refused in this wise, "Mr. Miner, I am not going to sign this; I have done nothing I should resign for," stands undenied. However, it would be as inutile as it would be tedious for us to pursue further the subject of plaintiff's alleged resignation, since on the same state of facts we held on the previous appeal that there was no genuine good faith issue (a) as to whether plaintiff actually had tendered her resignation or (b) as to whether the board had accepted it [Lynch, supra, 373 S.W.2d at 197–198(9)] and on this appeal no reason why we properly should or could depart from our former holding is suggested. Cf. Midwestern Machinery Co. v. Parsons, Mo.App., 415 S.W. 2d 545. For that matter, defendant does not *now* rely upon plaintiff's alleged resignation but, as we have noted, contends that no contract for the 1961–62 school year was entered into.

Plaintiff signed the form contract "the next day" after it was delivered to her on April 5 but left it in her desk until the afternoon of April 11. A meeting of the school board was to be held that evening. About 4 P.M. on that date she went to the superintendent's office intending to leave her signed contract there. However, the office was closed, so she immediately proceeded to the home of William R. Chinn, a member and vice-president of the board, and between 4:30 and 5 P.M. delivered to Mr. Chinn personally a sealed envelope which, as she then informed him, contained her signed contract. Mr. Chinn did not open the sealed envelope but took it to the board meeting that evening. Plaintiff was not present at the meeting. No statement by Mr. Chinn or any other member of the

board, either by deposition, answers to interrogatories or affidavit [Rule 74.04], appears in the transcript, but the secretary of the board testified by deposition that the sealed envelope was delivered to her as "the meeting was just starting." Without the envelope having been opened and (insofar as the record shows) without either statement or inquiry by Mr. Chinn or any other member of the board, the superintendent advised the board that plaintiff had returned her contract unsigned and recommended that "plaintiff be notified that *her services* [would be] *terminated at the end of 1960–61 school year*," and the board accepted and approved that recommendation. In his answers to interrogatories, the superintendent stated that "after the board had acted * * * the contract was handed to me." When the secretary of the board was asked "it was not until after the meeting of April 11th was held that the envelope * * * was opened, is that right," her laconic, enigmatic response was . "it was opened."

A special meeting of the board was held on April 13, 1961. At that meeting, the superintendent told the board that "in fact the plaintiff had returned the contract for the 1961–62 school year signed by her and that the signed contract had been in the possession of the secretary of the board, in an unopened envelope, at the meeting of April 11, 1961," taking the position however that the instrument was *not* "a contract." After presenting various "reasons why [plaintiff should] not be retained as a teacher," namely, plaintiff's alleged professional shortcomings and transgressions including the alleged "act of disloyalty" discussed above [see Lynch, supra, 373 S.W.2d at 196], the superintendent then "recommended [to] the board of education that [plaintiff] be notified that *her contract be terminated immediately*." Whereupon, the board adopted a motion (with four members voting "yes," "Chinn passing," and the sixth member having left before the vote) that plaintiff "has violated the rules and regulations of the board of education and that *her services*

*and contract be terminated immediately*," and thereafter another motion (with five members voting "yes") that plaintiff "be paid the balance of her contract for the 1960–61 term but that her services for the year be terminated immediately." Plaintiff and her attorney were present at the meeting of April 13, and the board was then informed of plaintiff's position that she had a contract for the 1961–62 school year.

On the following day, to wit, on April 14, 1961, two written notices signed by the president and secretary of the board were served on plaintiff, one notifying her "that your contract with the Webb City School District No. 92 is hereby immediately terminated under Section 163.100 revised statues (sic) of 1949 [now § 168.121; L.1963 p. 284 § 9–12] because of violations of the rules and regulations of the board of education," and the other notifying her "under Section 163.090 [now § 168.111(3); L.1963 p. 283 § 9–11(3)] * * * that your employment with the Webb City School District will be terminated at the end of this school year."

At a board meeting held on May 9, 1961, a motion was adopted "that the president and secretary sign all contracts returned signed by the teachers except the one returned by [plaintiff]." In her testimony by deposition, the long-time secretary could not recall whether the board had adopted a like motion in any prior year.

■ Defendant first contends that "there was no contract between the parties" because the form contract signed by plaintiff and returned by her "on its face shows that it is not a complete contract, 'signed by the teacher and the president of the board, and attested by the clerk of the district.' " Section 163.080 [now § 168.101; L.1963 p. 283 § 9–10]. There is no question but that in Missouri a teacher's contract must be in writing and authorized by the board. Sections 432.070 and 163.080 [now § 168.101]; Massie v. Cottonwood School Dist. No. 36 of Nodaway County, Mo.App., 70 S.W.2d 1108, 1109(2); Bailey v. Jamestown School

Dist. No. 11, Moniteau County, Mo.App., 77 S.W.2d 1017, 1018(2). But the conformity with such statutory provisions which is exacted by the law is "a substantial compliance" [State ex inf. McKittrick v. Whittle, 333 Mo. 705, 708, 63 S.W.2d 100, 101(3), 88 A.L.R. 1099], and a teacher's contract "shall be construed under the general law of contracts." Section 163.100 [now § 168.-121; L.1963 p. 284 § 9–12]; State ex rel. Foster v. Griffin, Mo.App., 246 S.W.2d 396, 398. Hence, it has been recognized in numerous cases that a teacher's contract need not be "in any particular form" [Edwards v. School Dist. No. 73 of Christian County, 221 Mo.App. 47, 51, 297 S.W. 1001, 1002] or in a single document bearing the signatures of the teacher and the president of the board and the attestation of the secretary of the board.[2]

■ In the case at bar, plaintiff was one of the teachers shown by the minutes of the board meeting on March 10, 1961 ("approved" at the meeting on April 4), to have been "reelected for the 1961–62 term." Thereafter, a form contract prepared by the secretary of the board which specified "the number of months the school [was] to be taught and the wages per month to be paid" [Section 163.080 (now § 168.101; L.1963 p. 283 § 9–10)] was tendered to plaintiff, as well as all other "reelected" teachers, with a notice that she had "fifteen days, or until April 20, in which to return [her] signed contract." See Section 163.090 [now § 168.-111(5); L.1963 p. 283 § 9–11(5)]. Within the stated period, to wit, on April 11, 1961, plaintiff signed the tendered contract and returned it to the board, thereby binding herself to the terms thereof. Section 163.-

100 [now § 168.121; L.1963 p. 284 § 9–12]; Baxter v. School Dist. of Miller, 217 Mo. App. 389, 395, 266 S.W. 760, 761(3). Taken in their entirety, the record facts established substantial and sufficient compliance with the statutory requirements [Sections 432.-070, 163.080 (now § 168.101), 163.090 (now § 168.111), and 163.100 (now § 168.121)], although the signature of the board's president and the attestation of its secretary were not placed on the instrument signed and returned by plaintiff. See cases cited marginally in note 2.

■ Defendant would distinguish and set aside the cases cited to this point in plaintiff's brief [State ex rel. Foster v. Griffin, Mo.App., 246 S.W.2d 396; Bailey v. Jamestown School Dist. No. 11, Moniteau County, Mo.App., 77 S.W.2d 1017] because, in the factual situations there considered, the teacher had filed a written application, in other words had offered to teach, before the school board employed her. However, other cases demonstrate the obvious truth that, in determining whether there has been substantial and sufficient compliance with the above-cited statutory requirements, it makes no difference which party is cast in the role of offeror and which in the role of offeree. See Baxter v. School Dist. of Miller, supra, and Boswell v. Consolidated School Dist. No. 8 of Newton County, Mo.App., 10 S.W.2d 665, 666, certiorari dismissed 323 Mo. 43, 18 S.W.2d 61.

■ Additional arguments are offered in support of defendant's contention that there was no contract. In the first place, defendant insisted in the trial court, and still as-

---

2. State ex rel. Foster v. Griffin, Mo.App., 246 S.W.2d 396, 398(5); Bailey v. Jamestown School Dist. No. 11, Moniteau County, Mo.App., 77 S.W.2d 1017, 1018(2); Massie v. Cottonwood School Dist. No. 36 of Nodaway County, Mo. App., 70 S.W.2d 1108, 1109; Boswell v. Consolidated School Dist. No. 8 of Newton County, Mo.App., 10 S.W.2d 665, 666(3), certiorari dismissed 323 Mo. 43, 18 S.W.2d 61; Edwards v. School Dist.

No. 73 of Christian County, 221 Mo.App. 47, 51, 297 S.W. 1001, 1002; Baxter v. School Dist. of Miller, 217 Mo.App. 389, 266 S.W. 760; School Dist. No. 1 in Audrain County v. Edmonston, 50 Mo.App. 65, 68. See Burger v. City of Springfield, Mo., 323 S.W.2d 777(7); First Nat. Bank of Stoutland v. Stoutland School Dist. R2, Mo., 319 S.W.2d 570, 573(4); Blades v. Hawkins, 133 Mo. App. 328, 112 S.W. 979(1).

serts here albeit parenthetically, that, in "re-electing" plaintiff at the meeting on March 10 and in causing to be delivered to her on April 5 the form contract with the accompanying notice copied marginally in note 1, the board did not extend an *offer* to plaintiff to teach during the 1961–62 school term. "An *offer* is an act on the part of one person whereby he gives to another the legal power of creating the obligation called contract." 1 Corbin on Contracts § 11, l. c. 24, note 18. Section 163.090 [now § 168.111(5); L.1963 p. 283 § 9–11(5)] provided in part that "[a]ny teacher who is informed of re-election by written notice or tender of a contract shall within fifteen days thereafter present to the employing board a written acceptance or rejection of the employment tendered and failure of a teacher to present the acceptance within such time constitutes a rejection of *the board's offer*." It is crystal clear that the board did extend an offer to plaintiff.

The next line of defense is that, if the board extended an offer, no contract was created because "such offer was withdrawn prior to its acceptance" by plaintiff. Preliminary to their argument on this subpoint, defendant's counsel remind us that " '[t]o constitute a contract there must be an acceptance of the offer; until the offer is accepted both parties have not assented, or, in the figurative language frequently used by the courts, their minds have not met'" [Hunt v. Jeffries, 236 Mo.App. 476, 156 S.W.2d 23, 27(2); 17 Am.Jur.2d Contracts § 41, p. 378], and that " '[t]o constitute acceptance of such an offer, there must be an expression of the intention, by word, sign, writing or act, *communicated or delivered to the person making the offer or his agent*. A mere private act of the person to whom the offer is made does not constitute acceptance.' " (Emphasis not ours) Hunt, supra, 236 Mo.App. at 484, 156 S.W.2d at 27(3). See 17 Am.Jur.2d Contracts § 44, p. 382. Defendant's two-pronged argument then runs along the line (a) that, since the board's rules and regulations included a provision that "communications between the

board and teachers * * * *should be* through the superintendent," delivery of plaintiff's signed contract to Mr. Chinn, vice-president of the board, and by him to the board's secretary, was "not sufficient," and (b) that, since the sealed envelope containing plaintiff's signed contract was neither handed by the secretary to the superintendent nor opened by anyone prior to the board's approval of the superintendent's recommendation that "plaintiff be notified that her services [would be] terminated at the end of 1960–61 school year," defendant's offer thus had been withdrawn prior to its acceptance.

■ *Of prong (a).* On its face, the quoted portion of the board's rules that "communications between the board and teachers * * * *should be* through the superintendent" was not framed in the language of a prohibitory command entailing invalidating consequences for the disregard thereof, but was a directory provision not relating to the essence of the thing to be done and not resulting in prejudice to the substantial rights of interested persons for the neglect thereof. 12A Words and Phrases, "Directory," p. 162; Black's Law Dictionary (4th Ed.), "Directory," p. 547. See State ex rel. Ellis v. Brown, 326 Mo. 627, 633, 33 S.W.2d 104, 107(2–6); State ex Inf. Taylor ex rel. Borgelt v. Pretended Consolidated School Dist. No. 3 of St. Charles County, 362 Mo. 249, 255–256, 240 S.W.2d 946, 950(5); Sandrowski v. Sandrowski, 230 Mo.App. 1056, 1059, 93 S.W.2d 81, 83. As was well stated in School Dist. of Harrisburg v. Eureka Casualty Co., 313 Pa. 342, 169 A. 771, 772, where notice of surety's cancellation of depository bond for the school district's funds was addressed and mailed to the wrong official but "continued in its course" until it reached the secretary of the school board, "The respective identities of the official giver and official receiver of the notice are material; *the identities of the respective intermediate transmitters are immaterial, for ordinarily transmission refers only to the 'mechanics' of a communication*." The general rule is

that "where the acceptance of an offer reaches the person who made the offer, it is immaterial by what mode the acceptance was sent." 17 Am.Jur.2d Contracts § 43, l. c. 381. See 1 Williston on Contracts (3rd Ed.) § 87, p. 279; 1 Restatement of Contracts § 68, p. 72. Certainly the efficacy of instant plaintiff's return of her signed contract to the board was in no wise affected by reason of the fact that it did not pass through the hands of the superintendent before reaching the board.

■ *Of prong (b).* As we have noted, plaintiff's signed contract in a sealed envelope was delivered to Mr. Chinn, vice-president of the board, between 4:30 and 5 P.M. on April 11, 1961, and by him delivered to the board's secretary that evening as "the meeting was just starting." Under authorities cited and quoted in *defendant's* brief which declare that "[t]o constitute acceptance of such an offer, there must be an expression of the intention, by word, sign, writing or act, *communicated or delivered to the person making the offer or his agent*" [Hunt, supra, 236 Mo.App. at 484, 156 S.W.2d at 27(3); 17 Am.Jur.2d Contracts § 44, p. 382], there was an acceptance of the board's offer *prior to* the superintendent's representation to the board that plaintiff's contract had been returned unsigned and *prior to* the board's approval of his recommendation that "plaintiff be notified that her services [would be] terminated at the end of 1960–61 school year." For it could not well be denied that plaintiff's signed contract had been delivered to an agent of the board when it was delivered into the hands of the board's vice-president and by him lodged with the board's secretary.

True, the superintendent asserted that his representation that plaintiff's contract had been returned unsigned was made in good faith because (so he said) "plaintiff had informed me that she had intended to resign" and that it was only "after the board had acted * * * the contract was handed to me." But it stands undisputed that the vice-president of the board, who was present at the meeting on April 11 and occupied a fiduciary relationship to the school district [State ex rel. Brickey v. Nolte, 350 Mo. 842, 853, 169 S.W.2d 50, 55(2); State to Use of Consolidated School Dist. No. 42 of Scott County v. Powell, 359 Mo. 321, 324, 221 S.W.2d 508, 510(5)], had actual knowledge that the sealed envelope contained plaintiff's signed contract, and it is plain that, regardless of whether or when the board's secretary opened the sealed envelope, plaintiff's signed contract actually was in her hands prior to the superintendent's recommendation and the board's approval thereof.

If, as has been held, a municipality may be charged in some situations with the knowledge of an individual member of the board of aldermen [Cropper v. City of Mexico, 62 Mo.App. 385, 387(2); Kingery v. City of Jefferson, Mo.App., 190 S.W. 976, 978], or of a policeman while on duty [Carrington v. City of St. Louis, 89 Mo. 208, 216, 1 S.W. 240, 242; State ex rel. Wander v. Kimmel, 256 Mo. 611, 633, 165 S.W. 1067, 1073; Willis v. City of St. Joseph, 184 Mo.App. 428, 431, 171 S.W. 27, 28(3)], or of a park foreman [Metz v. Kansas City, 229 Mo.App. 402, 416, 81 S.W.2d 462, 470], or of a street commissioner [Wagner v. Webb City, Mo.App., 168 S.W.2d 596, 598(3)], it would seem that, in the particular and peculiar circumstances of the case at bar, the school board should be held to have been charged with the actual knowledge of vice-president Chinn who, insofar as the record shows, sat mute as the superintendent erroneously, even if in good faith, represented to the board at the meeting on April 11 that plaintiff had returned her contract unsigned. For "every consideration of public policy seems to demand that each member of the board is the agent of the board as to any matter or knowledge coming to him affecting the public interest, and that any fact which does come to his attention which is vital to the public welfare must come to him officially." Painter v. Napoleon Tp., Henry County,

Ohio, D.C.Ohio, 190 F. 637, 639; 3 Merrill on Notice § 1325, l. c. 316. See Gividen v. Trustees of Common School Dist. No. 54, 126 Ky. 194, 102 S.W. 1191, 1192(1).

▌ Furthermore, numerous cases demonstrate that a party may be charged with knowledge notwithstanding such party's nescience. Thus, a party is, absent fraud, accident or mistake, held to have had knowledge of a contract which he or she had an opportunity to read but did not by reason of "indolence, folly or careless indifference to the ordinary and accessible means of information." Dickinson v. Bankers Life & Cas. Co., Mo.App., 283 S.W.2d 658, 663; Woolfolk v. Jack Kennedy Chevrolet Co., Mo.App., 296 S.W.2d 511, 515(6); Kap-Pel Fabrics, Inc. v. R. B. Jones & Sons, Inc., Mo.App., 402 S.W.2d 49, 57. See Miller v. Plains Insurance Co., Mo.App., 409 S.W.2d 770, 772(2); New York C. & Hudson River R. R. Co. v. Beaham, 242 U.S. 148, 151–152, 37 S.Ct. 43, 44, 61 L.Ed. 210, 216. And so it is that parties have been charged with knowledge of that which they would have known if they had opened a sealed envelope laid aside for the time being. Feldmeier v. Springfield Fire & Marine Ins. Co., 171 Wis. 377, 177 N.W. 583, 585(4); Aetna Ins. Co. v. Holcomb, 89 Tex. 404, 34 S.W. 915, 916, 918(2). "It is sufficient that the letter or communication be delivered to the noticee, though it be not read." 1 Merrill on Notice § 500, l. c. 472. "Of course it makes no difference that the letter was sealed and the recipient did not bother to open it." Id., § 500, l. c. 472, note 8. Even more specifically, a learned authority in the field of contracts writes that a letter from the offeror *revoking* an offer "should be held effective as soon as the offeree has had a reasonable opportunity to open and read the letter after it has been put into his hands or has been delivered at his business or home address." 1 Corbin on Contracts § 39, l. c. 165. We entertain a similar opinion with respect to the effectiveness of a communication from the offeree *accepting* an offer. In fine, we conclude that the school board was charged with knowledge of plaintiff's

signed contract in the sealed envelope before the board revoked its offer to plaintiff (so it is argued) by approving the superintendent's recommendation that "plaintiff be notified that her services [would be] terminated at the end of 1960–61 school year."

▌ For still another reason, a contract between plaintiff and defendant for the 1961–62 school year was created. To be effective, revocation of an offer must be communicated to the offeree before he or she has accepted. 17 Am.Jur.2d Contracts § 35, l. c. 374; 1 Restatement of Contracts § 41, p. 49; 1 Corbin on Contracts § 39, l. c. 165; Anderson v. Stewart, 149 Neb. 660, 32 N.W.2d 140, 142(3), 3 A.L.R.2d 250. Certainly the board and the superintendent had actual knowledge of plaintiff's acceptance of the board's offer before the attempted revocation of such offer was communicated to plaintiff. We have no doubt but that there was a valid contract between plaintiff and defendant for the 1961–62 school year and defendant's primary and principal point to the contrary must be disallowed.

▌ Defendant finally urges that, even if there was a valid contract, there was "a genuine issue as to whether plaintiff abandoned the contract" and that, therefore, the case should be remanded for trial. In response, plaintiff asserts (a) that, since *defendant* stated in its motion for summary judgment that "there is no genuine issue as to any material fact," its present position to the contrary should not be countenanced but (b) that, if this point be considered on its merits, there was no genuine issue as to abandonment. In considering whether this point should be ruled on its merits, we have, in the absence of any Missouri authority, turned to federal decisions construing Rule 56 of the Federal Rules of Civil Procedure [28 U.S.C.A. p. 302], as particularly persuasive in construing and applying our Rule 74.04. Cooper v. Finke, Mo., 376 S.W.2d 225, 228(1); Stoffel v. Mayfair-Lennox Hotels, Inc., Mo.App., 387 S.W.2d 188, 192 (8). By definition, a summary judgment cannot be granted if there is a "genuine is-

sue as to any material fact" [Rule 74.04 (c)], and a determination as to that does not depend upon what either or both of the parties may have said. Brawner v. Pearl Assurance Co., 9 Cir., 267 F.2d 45, 46(1); Bros., Incorporated v. W. E. Grace Mfg. Co., 5 Cir., 261 F.2d 428, 432–433. Thus, the fact that *both parties* move for summary judgment does not establish that there is no genuine issue of material fact and require that such judgment be granted for one side or the other. For a party may concede that there would be no such issue on his legal theory of the case and yet maintain that there would be such issue if his opponent's theory were adopted. American Fidelity & Cas. Co. v. London & Edinburgh Ins. Co., 4 Cir., 354 F.2d 214, 216(1, 2); Begnaud v. White, 6 Cir., 170 F.2d 323, 327(7); Walling v. Richmond Screw Anchor Co., 2 Cir., 154 F.2d 780, 784(1), certiorari denied 328 U.S. 870, 66 S.Ct. 1383, 90 L.Ed. 1640. Instant defendant's motion for summary judgment did not foreclose the complaint presently under consideration.

However, we are convinced that this complaint is without substance. Plaintiff and her attorney informed the board, at its special meeting on April 13, of her position that she had a contract for the 1961–62 school year, but at that meeting her services were *"terminated immediately."* On the morning of April 14, her offer to teach was rejected summarily on the ground that *"her services had been terminated by the board."* That same day the board served a formal written notice on plaintiff "under Section 163.090 [now § 168.111(3); L.1963 p. 283 § 9–11(3)] * * * that your employment with the Webb City School District will be terminated at the end of this school year." On April 21 plaintiff went to the superintendent's office and told him that "I was ready to fulfill my contract." This suit was instituted less than one month later, to wit, on May 16, 1961. In Count II of her petition, plaintiff prayed, inter alia, that the court "declare that she has a valid and subsisting contract with Webb City School District No. 92 for the 1961–62 school year; that she be permitted to teach in the public schools of said district and that the individual defendants [members of the school board] be restrained from interfering with her rights under said contract * * *." From the outset, defendant school district (as well as the individual defendants who have dropped out of the litigation during the intervening years) vigorously contested the case and denied that "it offered plaintiff a contract of reemployment for the school year 1961–62 * * * that said alleged contract was returned to the board of education * * * that the alleged contract was ever accepted by the defendant * * * that there was or is any contract between plaintiff and defendant for the school year 1961–62."

What we said on the previous appeal in denying a similar contention that there was a genuine issue as to plaintiff's alleged abandonment of her contract is equally appropriate here: "Enough is enough. She was not required to disrupt the school by attempting to force her way physically into the classroom. If the defendants actually prevented the plaintiff from teaching, such was sufficient. Wood v. Consolidated School Dist. No. 13, Mo.App., 7 S.W.2d 1018(5). We think she was sufficiently 'prevented' in this case. See Boswell v. Consolidated School Dist. No. 8 of Newton County, Mo.App., 10 S.W.2d 665 [667–668(9)]." Lynch, supra, 373 S.W.2d at 198(10). Having in mind that each case must be ruled on its own facts, we have no hesitancy in concluding that the record before us presents no genuine issue as to plaintiff's alleged abandonment of her contract.

The judgment for plaintiff is affirmed.

HOGAN and TITUS, JJ., concur.