IDA GOVE BYINGTON, APPELLANT, v. SCHOOL DISTRICT OF JOPLIN, RESPONDENT.*—30 S. W. (2d) 621.

Springfield Court of Appeals. July 29, 1930.

*R. A. Mooneyham* for appellant.

542

*Haywood Scott* for respondent.

SMITH, J.—Plaintiff brought this action to the September term, 1928, of the circuit court of Jasper county and the cause was tried before the court without a jury at the January term, 1929, on the 11th day of February, 1929. After the conclusions of all the evidence the court took the case under advisement until the 16th day of February, 1929, and rendered judgment in favor of defendant, and proper steps were taken for appeal to this court.

In her petition the plaintiff alleged that she was a teacher qualified with proper certificate to teach in the public school of this State, and that the defendant was a duly organized school district under the laws of the State of Missouri, and that certain parties therein named were the duly elected, qualified and acting members of the board of directors of said school district and that on the 24th day of September, 1927, she was employed by the defendant to teach in said school district for the school year commencing on the 26th day of September, 1927, and continuing for the school term of nine months at and for a salary of one hundred and twenty dollars per month, payable monthly during said term. A copy of said contract of employment was attached to the petition.

Plaintiff further alleged that on the 26th day of September, 1927, she entered upon the performance of the duties of her employment under said contract and faithfully performed all her duties under said contract until the 2nd day of December, 1927, when the defendant through its board of directors, superintendent and clerk, without any just cause or legal excuse whatever, prevented plaintiff from further performing the duties under said contract, and employed another teacher to take plaintiff's place and to finish out the term of school for which plaintiff under said contract was employed. That

on said last-mentioned day when she presented herself at the school building where she had been teaching, defendant's superintendent refused to permit her to continue with her work as teacher under said contract and she was prevented and forbidden to do so by defendant through its said superintendent. She alleged that on said date she presented herself in person at said school room, and also gave the board of directors of the defendant written notice of her readiness and willingness to carry out her contract, and requested the board of directors to permit her so to do, which request was wholly ignored and refused by said board.

Plaintiff further alleged that the defendant through its board of directors did on the 3rd day of May, 1927, undertake to adopt a rule containing the following language: "The contract of any married woman who shall secure election for any public school in Joplin without making the fact of her marriage known to the board shall be null and void, and any woman who shall marry during the term of her contract automatically cancels her contract."

Plaintiff then alleged that said rule is unreasonable and illegal and null and void as to her for the reason that the board of directors had no legal authority or power to adopt said rule, and for the further reason that the rule was secretly adopted and all knowledge thereof withheld from the plaintiff and that she had no knowledge whatever of said rule until the 2nd day of December, 1927. She alleged that subsequent to entering into said contract, she, on the 15th day of November, 1927, inter-married with one Glen Byington and thereby changed her name from Ida Cove to Ida Gove Byington.

She further alleged that since the 2nd day of December, 1927, she has been unable to get employment as a teacher elsewhere or any other employment of a character which she was fitted to do, and that by reason of the premises the defendant became indebted to her in the sum of one thousand and eighty dollars, and that she had received from the defendant three hundred six dollars, and no more, and that there is a balance due her of seven hundred seventy-four dollars, for which she prayed judgment.

The defendant answered by general denial, and by admitting its organization, and that the parties named in the petition were its directors, and that the plaintiff was employed by the defendant as alleged under the written contract attached to said petition; that the rule, hereinbefore quoted was adopted at a regular meeting of said board and that notice of the adoption thereof was given to all the teachers in public schools of Joplin, and was discussed in the teachers' meetings of said school district and that the plaintiff had knowledge thereof immediately after its adoption; that upon her election to a position as teacher the plaintiff was given written notice that she had been elected as a teacher subject to the usual teacher's

contract and subject to such rules and regulations as the board of directors had enacted or might thereafter enact concerning teaching in said schools, and she acknowledged receipt of said notice and accepted said position, subject to te rules and regulations of said board of directors; that said rule was a reasonable and legal regulation adopted for the benefit of the public schools of said district and for the benefit of the children attending said schools, and that plaintiff entered upon her duties as teacher with knowledge that the rule was a regulation in force in said school.

The last paragraph of said answer is as follows:

"Defendant further states that between the 24th days of November and the 27th day of November, 1927, the plaintiff was secretly married to a man residing in another State, namely: the State of Oklahoma; that on Monday, the 28th day of November, 1927, the plaintiff, without the knowledge or consent of the defendant and without the knowledge or consent of the superintendent of the public schools of said school district and without the knowledge or consent of any other competent authority, absented herself from her duties as said school teacher and failed to appear at the school at which she had been employed, as aforesaid, and that said superintendent employed and assigned another teacher to take the place of plaintiff; that on Tuesday, the 29th day of November, 1927, the plaintiff returned to the school at which she had been teaching in said school district and resumed her duties as school teacher; that, afterwards, she confided to the principal of said school where she had been teaching that she had married a man of means, but that she desired to continue teaching until the end of the first semester, or until the end of the first half of the school term, at which time she intended to resign her position as teacher and requested that said principal keep her marriage a secret and that the superintendent of said public schools and said board of education be not informed of her marriage; that, afterwards, on Friday, the 2nd day of December, 1927, the superintendent of said public schools in said school district became informed that the plaintiff had married and reminded plaintiff of said rule or resolution relative to teachers marrying while in service, that plaintiff agreed to quit her position as said school teacher under said contract and did not report at her school or at the office of said school district for service on the following Monday when said school reconvened and did not indicate any desire on her part to continue in service as a teacher in said public schools; that on the 5th day of December, 1927, a regularly qualified and duly substitute school teacher was assigned to the position vacated by plaintiff and continued to fill said position; that fifteen days thereafter, to-wit: on December 17, 1927, the plaintiff, by letter mailed to defendant, offered to resume her duties as a teacher in said public schools and informed the defendant at that time that she stood ready

to do so; that plaintiff did not at that time or at any other time present herself in person, either to the school where she had been teaching or to the office of defendant, to render any services under said contract or otherwise; that during the entire time from December 2, 1927, to the close of said school year, the plaintiff resided outside of said school district and a part of the time she spent outside of the State of Missouri.''

The reply denied each and every allegation of defense in the answer. The issues so made up were tried by the court and on the 16th day of February, 1929, a judgment was rendered for the defendant.

From the respondent's additional abstract we find the court filed a written finding of facts in this case, which we quote as follows:

''The following questions are presented for decisions by the record in this cause, viz.:

'' (1) Did the Board of Education possess the power and authority to legally enact, pass and promulgate the so-called marriage resolution, or rule in question; and if so, was it reasonable and therefore a valid rule, or resolution?

'' (2) Did the plaintiff voluntarily quit and abandon her school, or was she prevented from teaching the remainder of the school year by any overt act of defendant?

''(1)

''The court is of the opinion that the board of education did not possess the power, or authority, to pass and enforce said resolution or rule.

''The School Law of 1865, section 6, page 258, empowered school directors and boards of education 'to dismiss any teacher at any time for such reasons as they may deem sufficient.'

''This law was revised in 1870, so as to omit and leave out that part thereof above quoted, and the Legislature has not from that day to this, deemed it proper to restore said provision, or any provision of like import, notwithstanding the case of Arnold v. School District, 78 Mo. 226, which was a case to recover wages as a teacher for that portion of the school term which he was prevented from teaching by action of the directors in discharging him, and in locking the door of the school building, thereby preventing him from entering and teaching the school.

''Defendant in that case contended that the plaintiff had violated certain written rules of the district and in force, to the effect that no pupil should be subject to corporal punishment until the directors had been consulted and their assent thereto obtained, and that he beat and abused the pupils in a cruel and brutal manner by knocking one of them down with a billet of wood, and that he had stamped another.

"It was held that the directors had no authority either express or implied, to discharge the plaintiff; that the acts of plaintiff fell within the definition of incompetency and immorality and that the county school commissioner was expressly authorized to revoke the certificate of the plaintiff, and this terminated his office and contract as a teacher.

"The Legislature, in 1889, revised and amended the school law by enacting a new section known as section 7996, Revised Statutes 1889, which has come down unamended to this date, and now appears as section 11,138, Revised Statutes 1919.

"It is provided in this section that, 'The school board shall have no power to dismiss a teacher; but should the teacher's certificate be revoked, said contract is thereby annulled.' "

"Defendant, under this statute, had no power, or authority to dismiss the plaintiff, if she was dismissed.

"Section 11,137, Revised Statutes 1919, provided what teacher's contract shall contain, and defendant had no legal power, or authority to insert therein another term or provision. [Frazier v. School District, 24 Mo. App. 250, l. c. 254.]

"It therefore follows that plaintiff did not breach her contract by reason of her marriage."

## "(2)

"The only authority given or granted to school boards, boards of education and school directors, to enact and promulgate rules and regulations is found in section 11,137, Revised Statutes 1919, which provided that school boards shall have power to make all needful rules and regulations for (1) The Organization, (2) The grading, and (3) The Government of the school in their district.

"This statute evidently has reference to such rules requiring the pupils to be vaccinated, and excluding from the schools those who refuse to be vaccinated; 62 Mo. App. 8, and rules relating to the suspension of pupils for non-attendance; 71 Mo. 628, and to rules governing the conduct of pupils while at school, and while going to and from the school, and all other like rules, and not to the forfeiture, cancellation and annulling of teachers' contracts.

"Defendants could not, by its contract with plaintiff, enlarge its authority or power to make rules and regulations. [153 Pac. l. c. 485, cols. 1 & 2.]

## "(3)

"The court is of the opinion, and so holds that said rule or regulation is arbitrary, unreasonable and void, and that plaintiff was not bound thereby. [153 Pac. l. c. 485, col. 2; 144 N. Y. Sup. 87, l. c. 91; 69 N. E. 1092.]

## "(4)

"The burden is on plaintiff to sustain her contention that she was discharged and prevented from performing her contract with defendant by some overt act on the part of defendant, which she has failed to do in the opinion of the court.

"The testimony shows that she was not forcibly excluded from the school building or room where she was teaching, or that the door to the building or room was locked against her; nor does it show that she was threatened with forcible exclusion from the school room, or with being locked out, or in any other manner prevented from teaching.

"The testimony shows that, a short time after her marriage, she confided to Mr. Martin, the principal of the Lafayette school where she was teaching, the fact of her marriage, and that Martin informed Mr. Koontz, the superintendent, of her marriage, and that thereupon Koontz called plaintiff by 'phone and inquired of her about her marriage, and called her attention to the resolution or rule of the board against marriage during the school year. Plaintiff, in the 'phone conversation, stated to Koontz, according to his testimony which is corroborated by that of Mrs. Roy, that she had been thinking about quiting teaching at the end of the semester, but that she would like to teach the remainder of the semester, but that it was all right.

"However, Mr. Koontz, gave her to understand that the rule or resolution would be enforced. Thereupon plaintiff got in touch with Mr. Breazeale, the secretary of the board, and he told her he could do nothing, and that he was of the opinion that the board would enforce the rule strictly.

"The intention of plaintiff to quit teaching at the end of the semester did not within itself amount to an abandonment of her contract, but such intention throws light on the question of actual abandonment.

"If the school board as a board (and the directors of defendant can act only as a board when assembled as a board), ever passed a resolution or motion to discharge plaintiff, or declaring her contract forfeited, cancelled or annulled, or took any action whatsoever in the matter, other than the enactment of the marriage resolution or rule, the evidence does not even tend to show it.

"There is no testimony whatsoever tending to show that Koontz or anyone else was ever empowered or authorized by the board to enforce said resolution or rule."

This finding of facts shows clearly that there were two main points under consideration, viz.: (1) Did the board of education possess the power and authority to enact, pass and promulgate the so-called marriage resolution or rule in question, and if so was it a reasonable or valid rule? (2) Did the plaintiff voluntarily quit or abandon her

school or was she prevented from teaching the remainder of it by any overt act of the defendant?

The appellant in her statement and brief concedes that these are the only questions that were ever before the court.

The trial court in its finding of facts answered the first question in favor of the plaintiff in this very emphatic language:

"It therefore follows that plaintiff did not breach her contract by reason of her marriage. . . . Defendant could not, by its contract with plaintiff, enlarge its authority or power by making rules and regulations. . . . The court is of the opinion, and so holds that said rule or regulation is arbitrary, unreasonable and void, and that plaintiff was not bound thereby."

The plaintiff, of course, took no exceptions to this part of the court's findings, and the defendant did not appeal therefrom and as we view it that question is settled so far as this case is concerned, and while both plaintiff and defendant have spent a great deal of space in their briefs and arguments on this point, yet we think it was answered by the trial court, and needs no further comment from us. [Merrill v. Thompson, 252 Mo. 741, 161 S. W. 674.]

The second question was answered against the plaintiff, and that is the vital question, and the only one for our consideration. Did the plaintiff voluntarily quit or abandon her contract or was she prevented from her teaching the remainder of the school by any overt act of the defendant? This is a question of fact submitted to the court by agreement instead of to a jury, and the answer thereto must stand, if there is any competent evidence to sustain it under the law of the case.

We have read the evidence in the case and we find evidence to support the findings of facts as set out in paragraph 4 of the court's findings of facts. The plaintiff does testify that she was ready, willing and able to perform her part of the contract every day, except the one day, on which she says she was sick and unable to teach. This being the first day of her absence, but her testimony fails to show that she reported to any one that day as to why she was absent or away from her post of duty. Her testimony also fails to show that she ever went to her place of employment to assume work after she talked with the superintendent and told him that she was married. This conversation was on Friday, December 2. She also testified that she called over the telephone members of the school board between Friday and Monday and also conferred with her attorney on Sunday, who advised her that she had a perfect right to continue with the school. She said she never went back to Lafayette school (where she had been teaching) after that, because she had talked to a member of the board in the meantime, and never went in person to the administration office after that. She said she sent letters offering to

teach but never went in person. On December 17, 1927, she wrote a letter to the school board in which she said "I am now and have been at all times ready, able and willing to carry out my part of the contract, and shall expect my salary for the term."

The superintendent of the school testified that he talked to the plaintiff about her marriage and the rule the board had adopted and she had said that she had intended to quit anyway at the end of the term, and said "Very well," or "All right." He further said: "I know there was a perfect understanding and she did not protest. Mrs. Byington never presented herself after that at the office of the school district for service. Only as shown in those letters that she wrote to the school board did she ever indicate any desire on her part to continue in the service. These are the letters that have been introduced in evidence. The first evidence I had that she was dissatisfied at all was when I saw the letters she had written to Dr. Burnett dated the 17th of December, 1927. It was addressed to the Joplin School Board, Joplin, Missouri."

Mr. Martin, the principal of Lafayette school testified that she never presented herself after December 2, 1927, to teach at that school.

Mrs. Zelpha Ray, a teacher in the school heard the plaintiff talking to the superintendent over the phone, and heard her say, "Well, if you feel that way about it," and also "Well, I intended to quit after this semester, anyway." And after the phone conversation the plaintiff came out into the hall and with a group of teachers made the statement that she didn't intend to teach only until the end of that semester anyway.

The question of the plaintiff's abandoning her contract was one of fact with evidence to support her contentions, and there was sharp contradictory testimony on the part of the defense, which made it a question of fact for the trial court, and it is not for this court to pass on the question of the credibility of the witness or the weight of the evidence. [Willis v. Reed, 190 S. W. 277; Fitz Williams v. North Western Trust Co., 10 S. W. (2d) 334; Hecker v. Bleish, 3 S. W. (2d) 1008, 319 Mo. 149; Lee v. Conran, 213 Mo. 404, 415, 111 S. W. 1151.]

We find no reversible error made in the introduction of testimony.

The plaintiff requested and the court gave five declarations of law, and refused only one requested by plaintiff and that had to do with the resolution or rule of the board as to the marriage of teachers, and since the court decided that point in plaintiff's favor, it was not reversible error to refuse such instruction.

The judgment is affirmed. *Cox, P. J.,* and *Bailey, J.,* concur.