Blanche Deputy LYNCH, Plaintiff-Respondent,

v.

WEBB CITY SCHOOL DISTRICT NO. 92, William H. Perry, William R. Chinn, John Lewis, Harvey E. Arnce, Robert J. Baker, Ralph H. Costley, and Lawrence Miner, Defendants-Appellants.

No. 8194.

Springfield Court of Appeals.

Missouri.

Dec. 6, 1963.

Myers & Birk, Webb City, for defendants-appellants.

Seiler, Blanchard & Van Fleet, Herbert Van Fleet, Joplin, for plaintiff-respondent.

RUARK, Presiding Judge.

This is an appeal from a summary judgment (Civil Rule 74.04, V.A.M.R.) rendered in favor of plaintiff-respondent on the first count of plaintiff's petition in a school teacher's suit to enjoin the board and officials of the Webb City School District No. 92 from preventing her from performing her contract, for an order that she be reinstated, for the balance due under her contract, and for "such other and further relief."

The suit was brought May 16, 1961, against the Webb City School District and the named persons as its directors and its superintendent. It alleged that by written contract plaintiff was employed to teach for the school year (1960–1961) for a term of nine months, commencing in September 1960; that she did so teach through April 13, 1961, at which time the board terminated her services for the school year, although it voted to pay her salary for the remainder of the school year; that plaintiff offered to continue teaching, but defendants prevented her from so doing; that defendants tendered plaintiff a check in the sum of $1,266.-44 for the balance of the school year, but, as a condition of cashing the check, required her to execute a release in full of all claims; that plaintiff had (also) a claim against the district under a contract to teach for the following (1961–1962) year, and she refused to sign the release for that reason although she offered to give a receipt in full for the 1960–1961 year; but defendants refused to pay the balance unless she would release her claims in regard to the contract for the 1961–1962 year.

The second count declared upon a written contract to teach for the 1961–1962 year. It is not of concern to this case except as it may affect the finality and appealability of the judgment on count one.

The answers of defendants make various allegations. We will consider only those which are carried into the appellants' contentions in their brief as furnishing genuine issues. These contentions are whether or not: (1) plaintiff resigned; (2) plaintiff voluntarily abandoned her contract; (3) plaintiff performed her duties under the contract; (4) the contract originated in breach of faith and was obtained by unfair concealment; (5) plaintiff tried to mitigate damages; and (6) plaintiff had an adequate remedy at law.

The undisputed facts, as they appear from the pleadings, admissions, and answers to interrogatories, are as follows:

Plaintiff was a legally certified teacher. On April 8, 1960, there was a written contract whereby plaintiff was employed by defendants for a period of nine months, commencing on September 6, 1960, at a salary of $3850 per year payable in twelve monthly installments. She filed with the board her certificate from the State Board of Education of Missouri, entered upon her duties as a teacher, reported regularly for work and performed the duties prescribed by her contract, unless the matters contended in appellants' brief can be said to be a failure to perform.

At a board meeting held on March 10, 1961, a number of teachers, including plaintiff, were re-elected for the 1961–1962 term. A form of contract was sent to plaintiff together with a letter advising her that it was the contract for the next year and that she had until April 20 to sign and return it. Plaintiff signed such contract and delivered it on April 11.[1] On April 11, Superintendent Miner informed the board that plaintiff's contract had been returned unsigned. The answers of defendants to count two deny that a contract for 1961–1962 was entered into.

1. According to plaintiff's answers to interrogatories, she took this communication to the superintendent's office between four-thirty and five p. m. with the intention of delivering it to the secretary of the board or the superintendent, but the office was closed, so she took it to and left it with a member of the board. At any rate, the paper was in the hands of the secretary by the time of the April 11 board meeting.

At a special meeting of the board held on April 13, 1961, the superintendent advised the board he had been in error in advising the board that plaintiff had not signed and returned her contract. It was first voted that "Mrs. Deputy's services be terminated at the end of the 1960–61 term and that a notice be sent her to that effect signed by both the president and the secretary of the board." Superintendent Miner presented the following reasons why Mrs. Deputy not be retained as teacher:

(1) She is critical of other teachers.

(2) She is critical of the administration.

(3) She questions administrative decisions in an unprofessional manner.

(4) She lacks professional ethics in our opinion.

(5) She lacks desired tact in dealing with some parents or guardians.

(6) She is reluctant to carry out extra assignments.

(7) In our opinion, she performed an act of disloyalty toward the Board of Education, and the Superintendent of Schools.

Thereupon, it was voted that (a) plaintiff's services and contract be terminated immediately and (b) she be paid "the balance of her contract for the 1960–61 term but that her services for the year be terminated immediately."

Plaintiff was present at the meeting and through her attorney offered to continue her teaching, but at such meeting the superintendent informed her that her services were terminated and she should not report for work. Nevertheless, on the morning of the next day, before school hours, plaintiff called the superintendent and offered to work but was told not to. The following day she was notified in writing that her contract was "immediately terminated under Section 163.100 Revised Statutes of 1949 because of violations of the rules and regulations of the Board of Education." De-

fendants thereafter tendered plaintiff a check for $1,266.44 and plaintiff refused to cash it because it contained, on the back, a release of any and all claims against the district.

■■ We must first examine our jurisdiction. Anderson v. Metcalf, Mo., 300 S.W.2d 377. The summary judgment on count one was entered without further order in respect to finality. Ordinarily, a judgment to be final must dispose of all the issues in the case and if it is *not* final the judgment is not appealable. Appeals cannot be allowed piecemeal. Swan v. Stuart, Mo.App., 350 S.W.2d 832; Bays v. Lueth, Mo., 323 S.W.2d 236. But the appellate courts should avoid disposition of appeals on procedural grounds "when permissible." Hahn v. Hahn, Mo., 297 S.W.2d 559. Civil Rule 82.06, V.A.M.R., provides that, when a separate trial is had before the court upon claims arising out of the same transaction or occurrence, the judgment upon one shall not be final unless specifically so designated. But when separate trial is had before the court on separate and independent claims, the judgment shall be deemed final unless the court orders it held in abeyance or enters it as an interlocutory judgment.

■ In this case, counts one and two were based on entirely different and distinct contracts. They call for service for different periods. This service as to count one was nearly completed, although the period of payment of installments was not. As to count two, the period contemplated for service had not commenced. The contract for count one is not denied. The contract involved in count two is disputed. The two actions have no relation to each other except that the matters claimed in defense (to be considered hereafter) may, if they be a genuine defense at all, be provable by the same evidence. We believe the finality of the judgment on count one is governed by the holding in Pizzo v. Pizzo, 365 Mo. 1224, 295 S.W.2d 377. If the actions are entirely separate and distinct, the situation would be governed by

the concurring opinion in the Pizzo case at 295 S.W.2d 1. c. 387. If the actions are deemed to be related, then we think the judgment of the court is to be construed as an intention to make final disposition of count one and an order for separate judgment thereon, as held in the majority opinion of the Pizzo case. For such reasons we accept jurisdiction.

The written notice of "immediate termination" which was served on plaintiff-respondent was stated to be "under Section 163.100 Revised Statutes of 1949." That section specifically provides "[t]he board shall have no power to dismiss a teacher; but should the teacher's certificate be revoked, said contract is thereby annulled." It is not contended that plaintiff's certificate had been revoked. The courts have "inflexibly enforced" the rule of such statute prohibiting dismissal by the board. It has no implied authority to dismiss for any reason. Lemasters v. Willman, Mo.App., 281 S.W.2d 580; Magenheim v. Board of Ed. of School Dist. of Riverview Gardens, Mo.App., 347 S.W.2d 409. True, the statute does permit the board to withhold the pay of a teacher if such teacher fails or refuses to comply with the terms of the contract or execute the rules and regulations of the board, until compliance is rendered, but this withholding of pay is permitted only after due notice in writing. See Wood v. Consolidated School Dist. No. 13, Mo.App., 7 S.W.2d 1018. The action of the board of directors did not purport to be a withholding of pay pending compliance with the rules. As a matter of fact, it is the opposite. The action was a termination of the contract *and* payment for the balance of the year's salary.

The action by *someone* in making the payment of this sum conditioned upon a release of other claims was apparently without authorization of the board. The order of the board was to pay, not to pay upon condition. Nor was the plaintiff given any "due notice" as provided by the statute. The fact that its reasons for termination were entered on the minutes was not the notice contemplated by the statute. Neither were the items thereon specified sufficiently definite and specific to apprise a person of all the specific things she was doing or failing to do in order that she might intelligently comply. We believe the action of the board was a recognition that plaintiff had a valid contract and that defendant school system owed her the salary specified. Armstrong v. School District, 19 Mo.App. 462, 464.

As to appellants' contention that plaintiff had *an adequate remedy at law*: In contracts such as this there is something involved other than money. The professional standing and reputation of the teacher are involved. Also involved is the plaintiff's position and standing in The Public School Retirement System of Missouri. If she was not under the retirement system, her social security would be involved. The injury to a teacher because of a wrongful discharge can be more far-reaching than the specific amount of salary involved. We believe the plaintiff was entitled to pursue the remedy which she did. Lemasters v. Willman, supra, Mo.App., 281 S.W.2d 580, 590; see Magenheim v. Board of Ed. of School Dist. of Riverview Gardens, supra, Mo.App., 347 S.W.2d 409.

As to whether there is a genuine issue on the question of *whether or not the plaintiff resigned*: Defendants admit that plaintiff tendered no written resignation. Section 163.090, RSMo 1949, V.A.M.S., contemplates that a contract may be terminated by mutual consent of the teacher and the board. Defendants' rules and regulations provide that "after contracts have been signed resignations of teachers and staff members will be accepted only when satisfactory qualified replacements can be found."

Defendant Superintendent Miner, in answer to interrogatories, stated that plaintiff had verbally resigned (to him) on April 7, 1961, and that he communicated the fact of such resignation to the board at its meeting on April 11. He does not

contend that the board accepted such resignation. Actually Miner told the board that the plaintiff had not returned her signed contract, and at the next meeting (April 13) he acknowledged his error in that respect. The minutes of April 13 do not show any acceptance of a resignation. They show the board "fired" the plaintiff upon representation made by Miner. But *did* the plaintiff actually offer any "verbal resignation" to Miner? A further examination of his answers to interrogatories shows that he and plaintiff had some talk (and evidently some friction) on April 7. He says, "I had not at that time looked or examined the alleged contract returned by the Plaintiff because Plaintiff had informed me that *she had intended to resign*" and "April 7, 1961 in my office, Plaintiff said she *would* resign, that she would not work where she was *not* wanted." It is apparent that Superintendent Miner confused a statement of present intention to do an act in the future with a definite present fact. We conclude there is no genuine good faith issue as to either the fact (a) that plaintiff actually tendered her resignation, or the fact (b) that the board accepted it. Appellants have cited no authority to sustain their position in regard to this contention. We shall cite none in denying it.

■ As to whether plaintiff *voluntarily abandoned* her contract: On the night she was fired the plaintiff offered to work but was told she was terminated. Despite that, she called before school hours the next day and again offered to teach and was again refused. On that or the following day she was given a written notice she was "terminated." Enough is enough. She was not required to disrupt the school by attempting to force her way physically into the classroom. If the defendants actually prevented the plaintiff from teaching, such was sufficient. Wood v. Consolidated School Dist. No. 13, supra, Mo.App., 7 S.W. 2d 1018(5). We think she was sufficiently "prevented" in this case. See Boswell v. Consolidated School Dist. No. 8 of Newton County, Mo.App., 10 S.W.2d 665. Defend-

ants rely on Byington v. School Dist. of Joplin, 224 Mo.App. 541, 30 S.W.2d 621. That case is not comparable. There the teacher had failed to appear on November 28, the day she was married. On December 2 she was called into question about violating the regulation. She said she "had intended to quit anyway at the end of the term"; she left and never again presented herself for work. A teacher was assigned to her place. On December 17 she wrote a letter offering to resume her services, and the court held that whether she abandoned was a factual question.

■ Appellants suggest that plaintiff "abandoned the contract * * * by misconduct in violation of Rules and Regulations" of the board. We will consider this suggestion under appellants' next contention, that there was an issue as to *whether plaintiff performed her duties under the contract*. No authority is cited for this proposition. It may be that a failure to perform services might amount to an abandonment and a violation of rules and regulations might in some instances be so gross as to constitute a failure to perform; but in this instance there is no contention that the plaintiff did not regularly report and teach her class. The answers to interrogatories and the admissions show that the complaints against the plaintiff consist of the fact that she was "critical," "complaining," and "disloyal." She was alleged to be critical of some other teachers, critical of the way the blinds were fixed, and critical of the principal and the school system, and she allegedly compared it unfavorably with others. She was "disloyal" because at a teachers' meeting she asked the superintendent a question "in a manner which was critical." She complained constantly about being asked to carry out extra assignments, such as selling tickets to the basketball games. She stated that she would not stay after four-thirty to talk with any parents, and she violated rules and regulations by handing communications directly to a school board member. These are not all of the charges made against plain-

tiff, but they are a fair sample, and the others are of the same nature. We think they do not comprise either abandonment or failure to perform the contract. If such can be used as a means to dispose of a teacher who may criticize, complain, or is guilty of lese majesty, then the provisions of Section 163.100, V.A.M.S., are completely nullified. We think all the claims of the defendants under the contentions of abandonment and failure to perform, if proven, would not establish a defense to this action.

As to whether there is a genuine issue on plaintiff's *failure to mitigate damages*: The answer of defendant school district simply charged that "plaintiff has failed and refused to look for other employment to mitigate any damages." It is defendants' burden to plead and prove that plaintiff could have secured employment of similar character. Tate v. School Dist. No. 11 of Gentry County, 324 Mo. 477, 23 S.W.2d 1013, 70 A.L.R. 771; Edwards v. School Dist. No. 73 of Christian County, 221 Mo.App. 47, 297 S.W. 1001; Wood v. Consolidated School Dist. No. 13, supra, Mo.App., 7 S.W.2d 1018(11); (contrast the pleading in Alleger v. School Dist. No. 16, Newton County, Mo.App., 142 S.W.2d 660). Plaintiff was not required to accept any and all employment. It is not contended that plaintiff had the *opportunity* for employment in work of similar character. As a matter of fact, it is obvious that the teaching period for the school year was near the end, although the salary was stretched out over the full year. On this contention, also, the appellants cite no authority. We believe it deserves no further attention from us.

We consider the contention that there was a genuine issue as to *whether the contract was obtained by unfair concealment of material facts.*

In the first place, breach of faith or concealment of material facts was not one of the reasons assigned for the discharge of the plaintiff at the April 13 meeting. It appears to be an afterthought.

The answer of defendant school district states that plaintiff's contract originated in a breach of faith and was obtained by unfair concealment of material facts in certain respects, and according to the answers and interrogatories we find that the charge of breach of faith is based on "failure to show her correct age and failure to inform the Webb City School District #92 that she had been fired by the Sarcoxie School District." The allegation does not state that plaintiff affirmatively misrepresented these matters, only that she did not divulge this information; nor does it state that plaintiff was underage or overage, or that she represented herself as of *any* certain age; nor does it allege that she had actually been fired by the Sarcoxie District. It is not contended, and we do not find, that the negotiations leading to the contract, the proceedings by the board, or the rules and regulations required the plaintiff to affirmatively state her age or to affirmatively state whether she had been previously fired. Neither of these is made a condition of employment. The only representation appearing in the contract is that plaintiff is a legally qualified public school teacher. It is admitted that plaintiff filed her state certificate and defendants have never been notified that it has been revoked. She was not required to *volunteer* any information not required of her or made a condition of her contract. The case relied upon by appellants, Taggart v. School Dist. No. 52, Carroll County, 339 Mo. 223, 96 S.W.2d 335, was one in which single blessedness was made a condition of re-employment for a term to commence September 1. In the contract (May 1) the teacher made an affirmative declaration she was not married and that if she became married the contract would become null and void. On April 29 she had married, but she admittedly concealed such fact from the board. On July 29 the board discovered the marriage and declared the contract of re-employment to be null and

void. It was held that the teacher's written contract misrepresentation was a fraud of such nature as to affect the board's willingness to contract with her and that the courts would not aid a tort-feasor by enforcing a contractual obligation procured by fraudulent misrepresentations. In the instant case there is no claim, either of a requirement or condition, in respect to the matters alleged or of an affirmative misrepresentation in respect to such. We conclude that the "failure to show" or "failure to inform," if there *was* any such failure to show, was not material to the questions involved in this case and did not make a genuine issue.

The final contention is that the court erred in entering judgment against the individuals named because they were no longer directors of the defendant district. Again appellants cite no authority. The record shows that on March 15, 1962, hearing was held and the motion for summary judgment was taken under advisement. On July 23 the court rendered judgment for plaintiff on count one in the sum of $1,266.44 as balance due on the contract, with a decree reinstating plaintiff as a teacher on the records of defendants for the full 1960–1961 school year. Defendants were required to pay the amounts due to The Public School Retirement System of Missouri for teachers' retirement and to the Director of Internal Revenue for social security. On August 1, 1962, defendants filed motion for new trial wherein it was alleged that the court erred in entering judgment against *defendants* on July 23, 1962, "because on June 30, 1962 an election was held whereby Webb City School District #92 was dissolved and Defendants William H. Perry, William R. Chinn, John Lewis, Harvey E. Arnce, Robert J. Baker and Ralph H. Costley were dismissed as members of the Board of Directors of Webb City School District #92."

■ As to the money judgment against the district: If the claim of the teacher is otherwise valid, a judgment cannot be denied simply because of the difficulty of collecting it. Dye v. School Dist. No. 32 of Pulaski County, 355 Mo. 231, 195 S.W.2d 874(15).

■ The supporting affidavit for the motion for new trial states that in the dissolution of Webb City School District No. 92 there was a school district reorganization. If Webb City No. 92 was absorbed into another district, the absorbing district would be bound to carry out the obligations of the original Webb City District. McClure v. Princeton Reorganized School Dist. R–5 of Mercer and Grundy Counties, Mo.App., 307 S.W.2d 726, Mo.App., 328 S.W.2d 65.

■ The individually named defendants were sued as officers and representatives of the district. Certain of the acts prayed for and ordered must necessarily be performed by such officers. Civil Rule 52.12, V.A.M.S., provides for continuance of actions against successors of public officers and for substitution of parties. The suggestion of dissolution of Webb City District No. 92 came after judgment. It was not sufficient to provide information permitting substitution because the suggestion did not inform the court of the name of the reorganized district or the names of its officials. For aught that appears, the named individuals of the old district are the officials of the new one. We think under the circumstances that the cause should not be reversed for failure to substitute after judgment, but that the cause should be remanded to permit substitution of parties if it be so desired.

■ The judgment is not erroneous because it directs payment of amounts due to the retirement system and to social security. The order is to pay all sums *due*. Probably the plaintiff is under the retirement system, but if no sums are *due* for social security, nothing will be paid and no one is hurt.

The judgment is affirmed and the cause is remanded for further proceedings not inconsistent with this opinion.

STONE and HOGAN, JJ., concur.