# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

——————

No. 04-3045

——————

Patrice M. Cross,      *

     *

         Appellant,      *

     *

    v      *    Appeal from the United States.

     *    District Court for the

     *    Western District of Missouri.

Monett R-I Board of Education,      *

     *

         Appellee.      *

——————

Submitted: April 11, 2005
Filed: December 9, 2005

——————

Before COLLOTON, McMILLIAN and BENTON, Circuit Judges.

——————

McMILLIAN, Circuit Judge.

Patrice Cross appeals from a final judgment entered in the United States District Court[1] for the Western District of Missouri granting summary judgment to her former employer, Monett R-1 Board of Education (the "Board"), in her action alleging violations of the Missouri Teacher Tenure Act ("MTTA"), Mo. Rev. Stat. § 168.102

———————————————

[1] The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

et seq., the Missouri Administrative Procedures Act ("MAPA"), Mo. Rev. Stat. § 536.010 et seq., and federal due process. We affirm.

## BACKGROUND

For 24 years, Cross worked as one of two high school guidance counselors at Monett High School. At the beginning of the 2001-02 school year, the Board hired Debra Williams as the other high school guidance counselor. Williams and Cross did not get along. Their confrontations eventually turned physical, and each complained to the principal.

After serving as the assistant principal for 2 years, David Steward became the principal of Monett High School in 2002. On August 29, 2002, Steward witnessed Williams and Cross engaged in a shouting match in the counselor's office. Steward had a meeting with each counselor individually. In the meetings, each counselor blamed the other for the altercation. Steward scheduled four mediation sessions for each counselor. Williams and Cross attended three of the sessions together. After witnessing the ineffectiveness of the mediation and after being told by the mediator that Cross had not demonstrated a willingness to cooperate, Steward cancelled the fourth mediation session.

Because mediation did not solve the problems between Cross and Williams, Steward attempted to limit direct contact between them by ordering a division of the counseling duties. Steward assigned students in grades 9 and 12 to Williams and students in grades 10 and 11 to Cross. Because the confrontations continued, Steward asked Cross and Williams to prepare time logs in 30-minute increments for each day they were at school. Again, the tension between the counselors persisted, culminating in another physical altercation on January 31, 2003.

Based on his observations and the mediator's comments, Steward believed Cross was at greater fault. On February 6, he issued Cross a job target, a form of disciplinary action that in this case required Cross to "demonstrate positive interpersonal relations with educational staff" and to "be a cooperative partner in resolving the conflict between herself and Miss Williams." On that day Cross became ill. She missed work on February 7 and obtained a doctor's release from work for February 10 through February 14. On February 13, Steward sent Cross a letter concerning proper notification of medical absences.

Sometime between February 13 and February 21, Cross contacted Jeff Stacy, a Missouri State Teachers Association representative, to discuss the job target and the February 13 letter. Cross authorized Stacy to inform the school district that she was considering retiring at the end of the school year, which he did during a telephone conversation with Monett R-1 School District Superintendent, Dr. Charles Cudney. On February 21, Stacy and Cross met with Steward and Dr. Cudney to discuss Cross's work situation.

Before the February 21 meeting, Cross drafted an agenda for the meeting including such items as "Insurance Coverage" and "Procedure for informing office staff of the newly developed plan." Cross wrote notes on this agenda during the meeting. Below the title, she wrote "Plan is to retire at the end of this school year - June 1, 03." Under "Insurance Coverage," she wrote "Cobra Law (18 Months)? Coverage even if I leave the state?" Under "Procedure for informing office staff of the newly developed plan," she wrote "The end of the year communication and how I leave them is important. (Health Reasons +)." During the meeting Dr. Cudney told her: "Notice of retirement, we'll drop the job target and the time log." Before the meeting ended, Cross agreed to submit a retirement letter to Steward. After the meeting, Cross did not prepare time logs and the job target was "taken away."

Between November 20, 2002 and March 5, 2003, Cross received a considerable amount of information from the Public School Retirement System of Missouri. This information included a calculation of her full retirement benefits, a calculation of her early retirement benefits, which indicated the cost to purchase one-year out-of-state credit to qualify for a modified benefit and documents concerning the possibility of disability retirement. Between February 21 and April 8, Steward asked Cross on two occasions whether she had prepared her letter of retirement.

On March 24, 2003, Dr. Cudney sent the teaching staff contracts for the next school year and instructed the staff to return signed contracts by April 8, 2003. The contract contained provisions regarding pay rates, the first day of the school year, and the length of the school year. The Board has long followed the practice of providing contracts early and setting an early deadline for their return.

By letter dated April 8, 2003, and addressed to the Board, Cross wrote the following:

> This letter is to inform you that I will not be signing my contract for the 2003-2004 school year. As of July 1, 2003, I plan to retire from the Monett R-1 School System.
>
> I have been in education for 28 years, 24 as counselor at Monett High School. I regret that negative work conditions beyond my control have caused undue stress and affected my health to the point where I have had to come to the decision of early retirement.
>
> It has been a pleasure to work with the students, faculty, staff, and parents of this community. I have thoroughly enjoyed my time here. I thank all of those who have touched my life while here in Monett. I truly feel that my dedication and devotion to the R-1 District was well-placed.

Shortly after Cross submitted the above letter, Steward met with her to thank her for her years of service and to tell her that he would delay posting the vacancy for

the position of counselor until April 15, 2003, to give her time to tell her friends and family about her retirement. Cross did not indicate during that meeting that her decision to retire was not final.

Dr. Cudney told Cross that her letter would be submitted to the Board at the next meeting. The Board held a meeting on April 15, 2003, in which it voted to approve two retirements, including Cross's retirement, two resignations, and several new hires. Soon thereafter, Steward advertised a position for high school guidance counselor.

By letter dated April 24, 2003, Cross attempted to rescind her letter of retirement. On April 25, 2003, Cross met with Steward and Dr. Cudney to discuss her attempted recision letter. Dr. Cudney informed Cross that her "resignation" had been accepted by the Board at the April 15 meeting and as a result "it was a sealed deal." Dr. Cudney told Cross that she could apply for the position made available by her vacancy. Cross applied for the position, but was not selected.

On May 5, 2003, Cross's counsel wrote the Board demanding "a hearing on the record with the Monett School Board regarding the basis for Dr. Cudney and Dr. Steward having terminated her indefinite contract." Cross never received a hearing. Instead, by letter dated May 9, 2003, the Board denied her request, stating that "[i]n reality, Ms. Cross resigned her employment" and the Board had accepted her "resignation." On June 30, 2003, after borrowing money to purchase a year of retirement eligibility, Cross took early retirement.

Cross filed suit in state court alleging constructive discharge, breach of contract under MTTA, and violations of her right to a hearing under MAPA and federal due process. The Board removed the case to federal district court. Cross moved for partial summary judgment on the breach of contract, MAPA, and due process claims,

and the Board moved for summary judgment on all claims, asserting that Cross voluntarily retired.

The district court granted the Board's motion for summary judgement. As to the breach of contract claim, the district court held that Cross's April 8, 2003, letter constituted an "unambiguous notice of retirement" that terminated her contract under Mo. Rev. Stat. § 168.106(1), which provides that retirement terminates a tenured teacher's indefinite contract. Alternatively, the district court held that the Board's April 15, 2003, acceptance of the letter terminated her contract under Mo. Rev. Stat. § 168.112, which provides that a tenured teacher's contract may be terminated upon "mutual consent of the parties." As to the constructive discharge claim, the district court held that Cross had not alleged facts sufficient to show that her working conditions were so intolerable that she was forced to quit. Finally, the district court held that because Cross's decision to retire was voluntary, the Board did not need to afford her a hearing under MAPA or federal due process. This appeal followed.

**DISCUSSION**

We review a grant of summary judgment de novo, applying the same standards as the district court and construing the record in the light most favorable to the nonmoving party. Grabovac v. Allstate Ins. Co., 426 F.3d 951, 955 (8th Cir. 2005). Summary judgment is proper when the movant establishes that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Id. In addition, "[w]e review the district court's construction of state law de novo." Deretich v. City of St. Francis, 128 F.3d 1209, 1212 (8th Cir. 1997).

Cross argues that the district court erred in holding that her April 8, 2003, letter terminated her contract under Mo. Rev. Stat. § 168.106(1), which states that a "contract between a school district and a permanent teacher shall be known as an indefinite contract and shall continue in effect for an indefinite period, subject only

to [c]ompulsory or optional retirement when the teacher reaches the age of retirement provided by law, or regulation established by the local board of education." Cross argues that her letter of April 8 was only a notice of retirement and under the plain, ordinary meaning of the words of § 168.106(1) only retirement, not notice of retirement, terminates a permanent's teacher's contract.

Cross is correct that in interpreting a Missouri statute, a court must consider the words of the statute "in their plain, ordinary meaning." Rucci v. City of Pacific, 327 F.3d 651, 653-54 (citing Missouri v. Rowe, 63 S.W.3d 647, 650 (Mo. 2002) (en banc)). However, the Board is also correct that while a court must consider the plain, ordinary meaning of words in a statute, a court must not interpret a statute in a way that leads to an absurd result. See Weeks v. State, 140 S.W.3d. 39, 47 (Mo. 2004) (en banc). We agree with the Board that Cross's interpretation of § 168.106(1) leads to an absurd result. For example, under Cross's interpretation a tenured teacher could at the beginning of the school year submit a letter stating that he or she would retire at the end of the school year, but the school district would not be able to seek a replacement or take any steps to fill the vacated position until the teacher actually retired by packing up her belongings and leaving the building on the last day of school.

In addition, in construing a statute, a court may look to related statutes. State ex rel. BP Prod. N.Am., Inc. v. Ross, 163 S.W.3d 922, 927 (Mo. 2005) (en banc). Cross concedes that under § 168.112 a teacher who plans to retire at the end of a school term must give written notice of retirement no later than June 1 of the term. Contrary to Cross's suggestion, although a teacher may wait until June 1 to give notice, nothing in § 168.112, which states that "[a]ny teacher who desires to terminate his [or her] contract at the end of a school term shall give written notice of his [or her] intention to do so and the reasons therefor not later than June first of the year in which the term ends[,]" prevents a teacher from giving an effective notice before June 1. As the district court noted, Cross's April 8 letter was an unambiguous notice of retirement

and her reliance on Lynch Webb City Sch. Dist., 373 S.W.2d 193 (Mo. Ct. App. 1963), was misplaced. In Lynch, the court held there was no genuine issue of fact whether a teacher had "actually tendered her resignation," where the superintended related a conversation in his office in which the teacher told him she had intended to resign, but the teacher had not submitted a written notice of retirement. Id. at 198. In contrast, in her letter of April 8 Cross stated unambiguously that she would not be signing her contract for the 2003-04 school term because she was retiring at the end of the 2002-03 school term. Thus, the district court did not err in holding that Cross's unambiguous letter of April 8 terminated her contract at the end of the 2002-03 term under § 168.106(1).[2]

Cross also argues that, even if this court holds as a matter of law that her April 8 letter terminated her contract, the district court erred in granting summary judgment because there was a disputed issue of fact whether she was coerced into submitting the letter. The district court did not err. The facts and all reasonable inferences therefrom, viewed in the light most favorable to Cross, show that she voluntarily submitted her retirement letter. She authorized a teachers association representative to inform the Board she was considering retiring before Dr. Cudney mentioned retirement at the February 21 meeting. She then spent great time and effort acquiring

_____

[2]We also agree with the district court's alternative holding that the Board's April 15, 2003, acceptance of Cross's April 8 letter terminated her contract under § 168.112, which provides that "[a]n indefinite contract between a permanent teacher and a board of education may be terminated or modified at any time by the mutual consent of the parties thereto." On appeal Cross argues that § 168.112 is merely a timing provision limited to the grounds of termination set forth in § 168.106. We do not address Cross's argument concerning the district court's alternative holding. However, we note that in the district court Cross argued that § 168.112 was an independent and additional ground by which a teacher and school board could terminate a contract, and as the Board notes, this court has stated that it "will not entertain a new argument on appeal from the grant of summary judgment." Berg v. Norand Corp., 169 F.3d 1140, 1145 (8th Cir. 1999).

information about her potential retirement before submitting her letter. In similar circumstances, we have rejected a teacher's argument that he was coerced into retiring, holding that his actions in seeking information about retirement and requesting retirement forms before any person from the school district had discussed retirement with him showed that he had voluntarily retired. Cadelli v. Fort Smith Sch. Dist., 23 F.3d 1295, 1297 (8th Cir. 1994). In addition, Cross's agenda prepared before and her notes taken during the February 21 meeting with Steward and Dr. Cudney clearly demonstrated her desire to form an exit strategy from her employment. She wanted to know what effect retirement would have on her insurance coverage and whether COBRA would apply if she left the state. She was also concerned about how her co-workers would perceive her departure.

Contrary to her argument, Dr. Cudney's March 24, 2003, letter requesting that the teachers return their contracts by April 8 did not create a genuine issue of fact concerning coercion and voluntariness. Dr. Cudney's letter was sent to all of the teachers, consistent with the Board's policy of allowing teachers to decide early whether to sign their employment contracts, and cannot be interpreted as an attempt to force only Cross to retire.

Cross also argues that Steward's efforts to resolve the conflict between Williams and Cross created "an extremely hostile environment" that caused her to submit the retirement letter. Her hostile environment argument appears to be a re-statement of her constructive discharge claim in the district court. However, on appeal Cross "does not contest the district court's grant of summary judgment" on her constructive discharge claim, Appellant's Br. at 11, and we thus do not review the district court's holding that Cross "failed to allege facts to support a claim that the [Board] deliberately rendered [her] working conditions so intolerable that she was forced to quit or resign from her position." In any event, Steward's attempts to resolve the conflict, including issuing Cross a job target requiring to her to "[d]emonstrate positive interpersonal relations with educational staff, " do not create an issue of fact

as to the voluntariness of her decision to retire. Even if Cross submitted her letter in response to Dr. Cudney's statement "Notice of retirement, we'll drop the job target," we have stated that "the fact that an employee . . . has to choose between two unpleasant alternatives does not make the resulting action involuntary." Arneson v. Heckler, 879 F.2d 393, 396 (8th Cir. 1989) (internal quotation omitted).

Contrary to Cross's argument, the district court correctly held that Cross was not entitled to a hearing under MAPA, which provides that the right to a contested hearing is limited to those cases in which "legal rights, duties or privileges of specific parties are required by law to be determined after hearing." Mo. Rev. Stat. § 536.010(4). The "law" referred to in § 536.010(4) "encompasses 'any statute or ordinance, or any other provision of the state or federal constitutions that mandates a hearing.'" Physician No. 3491 v. North Kansas City, 51 S.W.3d 101, 106 (Mo. Ct. App. 2001) (quoting State ex rel. Yarber v. McHenry, 915 S.W.2d 325, 328 (Mo. 1995 (en banc)). MTTA calls for a hearing only when a Board initiates termination proceedings. Mo. Rev. Stat. § 168.116(1). Because Cross initiated the termination of her employment, she was not entitled to a hearing under MAPA.

Because Cross voluntarily chose to retire she was not entitled to a hearing or to continued employment under federal due process. See Hubbard v. Parker, 994 F.2d 529, 531 (8th Cir. 1993) (teacher's voluntary resignation does not implicate federal due process rights).

Accordingly, we affirm the judgment of the district court.

_____

-10-